ALBANY,<br>Jan. 1815.<br><br>JACKSON<br>v.<br>HART.

Judgment for the plaintiff. (a)

(a) See *Warren* v. *Lynch,* (5 *Johns. Rep.* 239.) as to the origin, nature and use of seals.

---

JACKSON, *ex dem.* HOUSEMAN, *against* HART.

This was an action of *ejectment,* for lot number 26, in the township of *Camillus,* in the county of *Onondaga.*

The cause was tried before Mr. Justice *Platt,* at the *Onondaga* circuit, in *June,* 1814.

The plaintiff gave in evidence *letters-patent* for the lot in question, dated the 13th *September,* 1790, to *George Houseman,* one of the lessors.

The defendant offered in evidence an extract from the " Balloting Book" filed by the commissioners of the land-office, in the office of the secretary of state, concerning military bounty lands, in the county of *Onondaga,* in these words: " The dead of the several regiments."

*A patent not void, but which has been issued by mistake, or on an insufficient suggestion, can only be avoided by sci. fa., or other proceeding, for that purpose, in chancery. It cannot be impeached in a collateral action; as by showing that the patentee intended, was a different person, and of a different name from the one mentioned in the patent. Where a grant has been made to A. B., but A. C. was the grantee intended, this is not such a latent ambiguity as will authorize the admission of parol evidence.*

| " Names and Ranks. | Regt. | Company. | Township. | Lots. | Acres. | Dates of Patents. |
|---|---|---|---|---|---|---|
| Houseman, George. | first. | Wendell's | 5 | 26 | 500 | September 13, 1790." |

A witness was also offered to prove the extract to be a true copy from the balloting book, as compared by himself.

The defendant further offered to prove, by parol, that no such man as *George Houseman* ever enlisted or served in *Wendell's* company, in the first *New-York* regiment, in the revolutionary war; and also, that a man by the name of *George Hosmer* did enlist in *Wendell's* company, in the first regiment of the *New-York* line, during the war, and served in that

company, until his death, which happened before the termination of the war; and that the patent was issued in the name of *George Houseman, by mistake,* and that *George Hosmer* was the soldier entitled to the patent, and was intended thereby, and that no other military lot had been balloted for, or granted to, or in the name of *George Houseman* or *George Hosmer;* and that *George Hosmer,* at his decease, left lawful issue, under whom the defendant derived title to the premises in question.

It was admitted that *Camillus* was the fifth military township; and the defendant's counsel admitted that there was a man who served as a soldier, in the *New-York levies,* by the name of *George Houseman.* The counsel for the plaintiff objected to the evidence thus offered on the part of the defendant, and it was overruled by the judge.

The defendant then offered the extract from the balloting book, and the parol evidence that it was a true extract, as evidence, that *George Houseman,* the patentee, died in service; and insisted, that if this evidence was admitted, the plaintiff, as the demise in the declaration was laid in 1810, ought to show a title in some other of the lessors.

This evidence was also objected to by the plaintiff's counsel, and overruled by the judge, under whose direction the jury found a verdict for the plaintiff.

A motion was made, on the part of the defendant, to set aside the verdict, and for a new trial.

*Henry,* for the defendant, contended, that it was competent to the defendant to show a mistake in the patent, or that no person, of the name of the patentee, ever was in existence capable to take; and that, therefore, the grant was void.*

The evidence offered at the trial could not have been rejected on the ground of its being an extract from the *ballot book* of the commissioners, for it was necessary for the commissioners of the land-office, pursuant to the act of the 6th *April,* 1790,† to decide on the person entitled to the bounty land; and this book is the evidence of their decision on that point. It is true, nothing is said in the statute about a ballot book, but this book is a collection of the decisions of the commissioners, as to the persons entitled to the lands.

* See *Jackson, ex dem. Dickson,* v. *Stanley,* 10 *Johns. Rep.* 133.

† 2 *Greenleaf's ed. Laws,* 332. 13 sess. c. 59. s. 6.

5

It is no answer to say that there was a *George Houseman* in the *New-York levies,*\* for the *levies* were not entitled to bounty lands, under the act.    They were to be rewarded for their services in a different way.    Soldiers in the *line* of this state, serving in the army of the *United States,* alone were entitled to the military bounty lands.

ALBANY,
Jan. 1815.

JACKSON
v.
HART.

\* 1 *Greenleaf's ed. Laws,* 40. 48.

Again, if *George Houseman* is dead, the plaintiff cannot maintain this action, unless he can show a title under the heirs and legal representatives of the deceased soldier ; but they are not made lessors.    And whether the patentee was dead or not, was a matter of fact for the jury to decide.

*Sill,* contra, insisted that the patent was conclusive in this case, and no parol evidence could be received against it. There is an apparent contradiction between the case of *Jackson* v. *Stanley,* and the decision of the court in the case of *Jackson, ex dem. Mancius,* v. *Lawton,*† which contains the true doctrine on this subject, that the only way of avoiding a patent is by *scire facias,* or process in chancery.    In the former case, *Kent,* Ch. J., to show that the difference in the christian name of the patentee being a latent ambiguity, extrinsic evidence might be resorted to, to explain the mistake, relies on cases decided in regard to wills or devises.    Without adverting to the difference between a *will* and a *patent,* we contend, that the cases cited would not authorize an alteration in a will, like the one contended for in the present case, and are, therefore, not applicable.    They are two classes of cases :

† 10 *Johns. Rep.* 23.

1. Where there are two persons of the same name ; and,

2. Where, for greater certainty, the description of the person controls, and the name is rejected.

In class the first, are the cases in 5 *Co.* 68., 2 *Atk.* 373. 239., and 3 *Atk.* 258.    In the second class of cases, are to be found 6 *Term Rep.* 671.    2 *Vesey,* 216.    2 *Equ. Cas. Abr.* 245. *Ambler,* 175.

There is another class of cases, where a person has a nickname, or name by reputation, where the party may plead that he is as well known by that as by his true name.‡    The two classes of cases are perfectly reconcilable with the statute of frauds.    They do not contradict the will.    The attempt, in the present case, is not to explain or to render the description of

‡ 1 *Vesey,* 231. 266.

the person certain, but to substitute a new and a different name.

Great latitude has been allowed as to letting in evidence, in regard to wills, so as to effectuate the *intent* of the testator. But, in regard to *patents*, it is presumed that the court would hardly go the same length, especially when the impolicy and dangerous tendency, of admitting parol evidence to explain written instruments is generally acknowledged.

As to the admissibility of the *books* of the commissioners of the land-office, no doubt, that the death of a person may be proved in a court by *hearsay* testimony, or by registers kept by persons appointed to record births and deaths. But, where hearsay evidence is given, the other party has a right to cross-examine. The commissioners of the land-office were not a *court*, nor were they directed or authorized to keep such *books*, which cannot, therefore, be evidence of themselves. The commissioners had no power to decide on the fact of the death of the soldier, nor did they pretend to exercise any such powers; for they granted patents indiscriminately to all whom they supposed entitled to lands, without inquiry into the fact of their being alive or dead. These ballot books are extremely loose and inaccurate, and not entitled to the distinction of being received as evidence.

Again, it is said that *Houseman* could not take the land granted, because he was not a soldier in the *line* of the army. But if the patent is conclusive as to the name or person of the patentee, it is equally so as to this point. Besides, this is a question which cannot be examined in this action. If the legislature, who are the sole dispensers of their own bounty, have thought proper to grant land to any person, his title under the patent cannot be disturbed, as long as the patent remains in force. If his title is to be impeached, the patent must be avoided by a *scire facias*, or a suit in equity.

*Henry*, in reply. We do not mean to contend that it is competent to show, by *parol*, that the name of the patentee is mistaken. The question is, whether the patent is not void, on the ground that there was no such person as the one named in the patent, in existence, at the time, capable of taking, or, in other words, that the patentee is a nonentity; for how is a *scire facias* to issue to, or a bill in chancery be filed against, a nonen-

tity? We had only to prove the fact of non-existence. We offered to show that there never was a person of the name of *George Houseman* in the line of the army, or any person in existence to whom the patent in question could issue.

Though the acts of the commissioners were not judicial, they were of that nature as rendered them, of necessity, evidence. Though a person was a soldier in the line of the army, it did not follow, of course, that he was entitled to the bounty-land, for he may have been a deserter. The commissioners having power to determine or designate the persons entitled to these bounty lands, must necessarily have the power to decide on the identity of the person. The description or designation of the person entitled, was the *substratum* of the grant, for without such a designation of the person, no patent could issue. Suppose there had been two persons of the name of *George Houseman*, one alive and the other dead, the commissioners must have described the persons of each, and the particular lot of land to which each was entitled. And this description or designation of the persons would, necessarily, be evidence, otherwise, it could not be known to which of the two lots they were respectively entitled.

No doubt, that where a patent can be repealed, the proper course is to issue a *scire facias* for the purpose. But where a patent has issued to a person not in being, it is, *ipso facto*, null and void. There is no need of any process to repeal it.

PLATT, J. It is a *first principle* in the law of tenures that the state is the only original source of titles; and that the state possesses a sovereign right to grant lands to whom it pleases, *with* or *without* consideration.

These grants may be made either by *statute*, or by patent, under the great seal, or by any public functionary, designated by law for that purpose.

In this case, the public agents who were entrusted with the great seal for that purpose, have made a grant, of record, in the most solemn form, to *George Houseman*, a *real person*, capable of accepting the grant.

On the part of the defendant, it is attempted to defeat the patent, by showing that the bounty of the state was misapplied in making the grant to *George Houseman*, who served only as a

soldier in the *levies*, whereas it ought to have been made to *George Hosmer*, who was a soldier in the *line* of this state, during the war.

It is admitted that here are two distinct names, and two real persons corresponding with them.

I think it is not the province of this court to inquire into the cause or motive which induced the state to make this grant; the terms of the patent being general, without any consideration expressed, and containing no reference to military services. We have no more right to make this inquiry in the case of a *patent*, than in case of a grant by *express and positive statute.*

It is true, that the state may be deceived, or a grant may be made through mistake, but the plain remedy is, to vacate such grant by *scire facias.* There is no obstacle to such a proceeding in this case, as the counsel for the defendant seemed to imagine. *George Houseman* is admitted to have been a real person, and, therefore, could be summoned on *scire facias*, or, if he be dead, as is pretended, he has heirs, or if no heirs, then the lands have escheated.

But if the state have made an improvident or mistaken grant, the state only can take advantage of it. If the state waives its right to vacate the patent, it seems to me altogether inadmissible that an individual who happens to be in possession of the land, can exercise the sovereign power of the government, in questioning the validity of this patent, for his own private benefit.

In the case of *Jackson, ex dem. Dickson and others*, v. *Stanley*, (10 *Johns. Rep.* 133.) this court decided that it was competent for the plaintiff to prove, by *parol* evidence, and the ballot book, that a patent to *David Hungerford* was intended for *Daniel Hungerford.* The ground of that decision seems to be, that " the omission or mistake of the *christian* name of the grantee, rendered the grant void." (*Humble* v. *Glover, Cro. Eliz.* 328.) And that patent being void, it was competent for the legislature in that case, by statute, to grant the same land to *Daniel Hungerford.*

This case is distinguishable from that above cited, in two features, 1. The alleged mistake here is in the surname, and not merely in the *christian name* of the grantee; 2. The state has not, in this case, interfered to assert its right by a new legislative grant to the opposite claimant.

I think the old remedy of summoning the patentee before a *judicial tribunal*, for the direct and express purpose of showing cause why the grant should not be vacated, on the ground of fraud or mistake, is wisest and safest, if not the only constitutional mode of vacating such a grant. But whether the legislature can dispense with all the forms of judicial proceedings, and *arbitrarily*, upon an *ex parte* application, defeat a patent by a legislative act, need not to be considered in this case, because the legislature have not attempted to assert the right of the state in that mode. If, however, this case is not distinguishable, in its essential features, from the case of *Jackson* v. *Stanley,* (10 *Johns. Rep.* 133.) I repose myself with entire satisfaction on the unanimous decision of this court, in the case of *Jackson, ex dem. Mancius,* v. *Lawton,* (10 *Johns. Rep.* 23.) and the authorities there cited. In that case, the plaintiff claimed under a patent to *George Mancius,* for lot No. 128, in the *East Cayuga* reservation, dated the 28th of *October,* 1811. The defendant, *Lawton,* offered to give in evidence a patent to *Stephen Allen,* for the same lot, bearing date the 5th of *March,* 1812, and also offered to prove that *Allen* was the occupant of the land, having, by law, the preëmptive right; that he had paid the appraised value of the land, with interest, to the state; and that the first patent (to *Mancius*) was issued by mistake, which evidence was overruled at the trial, and this court sanctioned that decision. Chief Justice *Kent,* in delivering the opinion of the court in that case, says, "The patent granted to the lessors of the plaintiff being the elder patent, is the highest evidence of title. As long as it remains in force, it is conclusive as against a junior patent." "Nor can the court take notice of any equitable claim upon the government which a third person might have had in respect to the lands in question." "If the elder patent was issued by mistake, or upon false suggestions, it *is voidable only;* and unless letters patent are absolutely void on the face of them, or the issuing them was without authority, or was prohibited by statute, they can only be avoided in a regular course of pleading, in which the fraud, irregularity, or mistake, is directly put in issue." "The regular tribunal for this purpose, is chancery, founded on a proceeding by *scire facias,* or by bill or information. It would be against precedent, and of dangerous consequences to titles, to permit letters patent (which

are solemn grants of record) to be impeached collaterally, by *parol* proof, in this action."

The rule is indisputable, that parol evidence cannot be received to contradict or vary a written instrument, of clear, certain, and unequivocal import. A *latent ambiguity* may be explained by parol proof, in order to elucidate and explain written words of doubtful sense ; as if a grant be made to *John Smith*, and there be several persons of that name, parol evidence is admissible, to explain which of the persons bearing the same name was intended. So, parol evidence would be admissible to prove, that *George Houseman* and *George Hosmer* are the same person. But certainly it is not explaining a latent ambiguity, to prove that a grant to *George Houseman*, a real person, was intended for another person of the name of *George Hosmer.* Such an extension of the rule would destroy the security of written conveyances. If a different person may be substituted by parol proof, for the person certainly described as grantee in a deed, there is no other essential part of the deed which might not be altered in the same way. Such a relaxation in the established rules of evidence, would defeat the spirit and policy of the statute of frauds, which requires conveyances of land to be in writing. And *cui bono?* It is not contended that this patent enures to the benefit of *George Hosmer.* The defendant is confessedly without any title to the land in question. To impeach a public grant of record, in this collateral manner, operates as an unfair surprise upon the patentee ; it would supersede and abolish the safe and easy remedy by *scire facias,* which is sanctioned by the wisdom and experience of ages, and, in my judgment, it would be a dangerous innovation.

I am, therefore, of opinion, that the plaintiff is entitled to judgment.

YATES, J. and VAN NESS, J. were of the same opinion.

SPENCER, J. not having heard the argument in the cause, gave no opinion.

THOMPSON, Ch. J. The defendant is in possession under a title derived from *George Hosmer,* and is not, therefore, to be

considered as standing on the footing of a mere naked occupant. And if the evidence on his part was admissible, it would show, conclusively, not only that *George Houseman*, who claims to be the patentee, was not the person intended, but that *George Hosmer* was the real patentee. It is not necessary to establish the latter branch of the alternative; for the defendant may rest his defence upon showing a title out of the lessor of the plaintiff; and if he can show that the patent was void, or that the person who claims to be the patentee was not the person intended, it will be sufficient.

The evidence offered was not for the purpose of contradicting the patent, but to explain a latent ambiguity, and identify the patentee. It is admitted that the premises are a part of the land set apart as bounty lands for the two regiments belonging to this state; and it was not pretended, in the argument, that *George Houseman* came within this description of persons. Had the patent described the patentee, as a soldier in Captain *Wendell's* company, in the first regiment, it would have been necessary for *Houseman* to have proved that he answered that description, although it would have been extrinsic evidence. And when the patent is silent as to description of the patentee, I can see no objection to the admission of extrinsic evidence to identify the patentee, any more than there would be to testimony to identify and locate the land granted. This is not evidence repugnant to or contradicting the patent. Nor is it, in fact, evidence which is necessarily to make void the patent, but only shows, that he who sets himself up as the patentee is an impostor. Can it be, that any man has a right to go to the secretary's office, and if he can find a patent issued to a person of the same name which he bears, that he can avail himself of such patent, and that his identity is not to be questioned? It is perfectly immaterial whether the opposition to his claim comes from one of the same name with the patentee, or from any other person who has a right to dispute his title; and that the defendant in ejectment has a right to show that the plaintiff has no title, cannot be denied.

Suppose it could have been shown that *George Houseman*, who claims the benefit of this patent, was a *British* soldier during the whole revolutionary war, might not this have been done? That may be said to be an extreme case. But if the

principle be sound upon which the testimony offered was rejected, it would apply to the case I have put. For it would be nothing more than inquiring whether the lessor of the plaintiff was, in fact and in truth, the patentee, or person he pretended to be.

From the best consideration which I have been able to give this case, I cannot take it out of the principles which governed the decision in *Jackson* v. *Stanley*, (10 *Johns. Rep.* 136.) The defendant there claimed title under *David Hungerford*, being the name of the patentee. But upon the trial evidence was admitted to show that it was not *David Hungerford* who was intended as the patentee; and the competency of such evidence was sanctioned by the opinion of the whole court. Indeed, the very same evidence, to wit, the balloting book, which was decided in that case to be good evidence, has been here rejected. This evidence was admitted in that case for the express purpose of showing that the patent was void, because there was no such person as *David Hungerford*, who was entitled to military lands, but that *Daniel Hungerford* was the person really intended. If this was not the principle which governed that case, I know not upon what ground the plaintiff could recover. If, under the patent, the title was vested in *David Hungerford*, it was not, nor could be, pretended that the legislature could devest him of his title, and give it to *Daniel Hungerford*, the person really intended as the patentee. The patent to *David* must first be got rid of, before the act of the legislature could take effect, and so it was considered by the court. Notwithstanding there was a person of the same name with the patentee, who claimed title to the land, the court said the patent was void, because he was not the person intended, and that it was competent to show this by *parol* evidence; and if such evidence is admissible, that which was offered in the case now before us was conclusive to show that *George Houseman* was not the person intended as patentee. We must, at all events, for the purposes of the present motion, assume that the proof would have established that fact.

I am persuaded, that no solid distinction can, in principle, be made between this case and that of *Jackson* v. *Stanley*. The great question, in both cases, is whether *parol* evidence is admissible to show that the person claiming to be the patentee

was not the person intended. If there be any substantial dif- ference in the two cases, it is much in favour of the defendant in this case; because, the mistake there was in the *christian* name, and it was admitted, on all hands, that *Daniel Hunger-ford*, who was the person really intended, could not take under that patent. But in the present case, the mistake is in the *sur-name*, and it may well be questioned whether *George Hosmer* may not hold the title under this patent. The law knows only of one christian name, but a person may have divers surnames, and it would have been competent for the defendant to have shown that *George Hosmer* was known also by the name of *George Houseman.* (5 *Johns. Rep.* 84. *Co. Lit.* 3. a. 15 *Vin.* tit. *Misnomer, C.* 5, 6. 413.) And it is expressly laid down as a rule on this subject, that in grants and obligations the mistake of the *surname* doth not vitiate, because there is no repugnancy that a person should have two surnames. It is, however, unnecessary to say that the title vested in *George Hosmer*; it is sufficient for the defendant to show that it did not vest in *George Houseman*; and that the testimony offered, to es-tablish that fact, was admissible, is, in my opinion, settled in the case of *Jackson* v. *Stanley.* I am, accordingly, of opinion that a new trial ought to be granted.

Judgment for the plaintiff.