THE SAVAGE MANUFACTURING COMPANY *vs.* Z. H. WORTHINGTON, EXECUTOR OF WILLIAM WORTHINGTON.—*December* 1843.

Z. sold to W. a tract of land, gave him a bond of conveyance, and received his promissory note signed by him, *first* in his own name, and *secondly* as agent for the S. M. Company. The latter was a manufacturing institution, and required land for its operations. The note not being paid, Z. brought his action against both; the Company only appeared; the declaration counted upon the note. The proof showed that the agent was the general agent of the Company; had bought other land for the use of the Company which it retained and paid for, and that the agent was in the habit of signing its notes as agent, which were paid by the Company. HELD: that the bond of conveyance was the only legal evidence of the nature and character of the contract, and that the purchase was made by W. on his own account; and as the Company was not authorised to become surety by its charter, the note was a nullity.

Where a note is executed by an agent before it is admissible in evidence, it is necessary to prove, not only his signature, but the authority by which it is made.

A bond of conveyance which recites that the obligor did 'sell to the obligee, and contract and agree to grant and convey to him, his heirs and assigns, a certain tract of land, acknowledging the receipt of the cash part of the purchase money from him, with the notes of the obligee, and another for the balance thereof, and stipulating until default should be made in the payment of the purchase money, that he should hold the land sold as aforesaid, demonstrates that the obligee made the purchase on his own account, and parol evidence is not admissible to contradict it in that respect.

Where by the terms of a charter a manufacturing company had no power to assume the responsibility of a surety, the note of such a company executed upon no other consideration than as surety, is void.

Parol evidence is inadmissible to prove that a grant made to one person was intended to be made to another.

APPEAL from the *Howard District* Court of *Anne Arundel* County.

This was an action of *assumpsit*, commenced on the 17th April 1840, by the appellee against the appellants and *Amos A. Williams*. The latter was returned *non est*, &c., and did not appear to the action.

The plaintiff declared, for that whereas the said *Amos A. Williams*, and the said the *Savage Manufacturing Company* (by its then agent, *Amos A. Williams*, in that behalf,) heretofore, to wit, on, &c., at, &c., made their certain promissory note in writing, bearing date the day and year aforesaid, and thereby then and there promised to pay, one year after the date thereof, to the said plaintiff, one thousand three hundred and sixty-six dollars and two thirds of a dollar, with legal interest thereon, for value received by the said *Amos A. Williams* and the *Savage Manufacturing Company*, the defendants in this action, and then and there delivered the said note to the said plaintiff; by reason of which premises, &c., and being so liable, &c. And also upon the common counts.

The defendant, the S. M. Co., pleaded *non-assumpsit*, on which issue was joined.

1ST EXCEPTION. The plaintiff in order to prove the issue on his part, offered in evidence the following promissory note, having first proved it to be signed and delivered by *Amos A. Williams*, as thereby appears.

SAVAGE, *Anne Arundel County*, *March 11th*, 1839.

"$1,366⅔. One year after date, we promise to pay to *Zachariah H. Worthington*, executor of *William Worthington*, deceased, or order, one thousand three hundred and sixty-six dollars, and two-thirds of a dollar, with legal interest thereon, for value received. AMOS A. WILLIAMS,

AMOS A. WILLIAMS,

*Agent for Savage Man'ng Co.*"

Witness,—*John G. Holland.*

To the admissibility of which note in evidence, the defendants by their counsel objected, on the grounds that it does not sustain, but substantially varies from the declaration, which objection for the reason assigned the court, (Dorsey, C. J., Wilkinson and Brewer, A. J.,) overruled. The defendants excepted.

2ND EXCEPTION. The plaintiff to support the issue joined on his part, proved by the subscribing witness thereto, the execution and delivery of the above recited promissory note, at the same time declaring his intention in connexion therewith, to offer to the jury, the testimony on his part, hereinafter mentioned and referred to, and therefore read the said note in evidence to the jury. The defendant, by the consent of the counsel and of the court, reserving his right to object to the admissibility of said note in evidence to the jury, until all evidence in relation thereto had been given to the jury. The plaintiff further proved by a competent witness, that several notes were given him within a few years past, for a considerable sum of money, which were signed in exactly the same manner in which the note sued upon in this cause is signed, and that one of said notes was paid him by the said company, in the year 1840, and that another note was given him for a considerable sum of money, which was drawn in favor of the said the *Savage Manufacturing Company,* or order, and signed by *Amos A. Williams* as the drawer, and that this note was endorsed on the back of the same, "A. A. W., agent for S. M. Co.;" and that said note was paid by said company, on or before the year 1840; and that said witness held another note drawn in his favor, by said A. A. W., in his individual capacity; that said witness was in the employment of the company, and had lived at the place where the works were situated, and had been familiar with the transactions of the said company for many years.

The plaintiff also offered to prove, and did prove by another witness, that a promissory note was signed by A. A. W., for a considerable sum of money, and was drawn in favor of the said the S. M. Co., and made payable to the order of the said

company, which was endorsed in the following manner: "A. A. W., agent for S. M. Co.," and that said note was given to the sister of the witness by said A. A. W., as agent of said company; that he, the last mentioned witness, presented said note for payment to a clerk of said company, and that said clerk said he could not pay the same, until he made inquiries of the said company; that sometime afterwards, said witness called upon the said last mentioned clerk, who paid him the interest due on said note, and that said payment was made in the year eighteen hundred and thirty-nine or forty. And the plaintiff for the purpose of further proving the issue in this cause, shewed by yet another witness, that he had in charge a promissory note for a considerable sum of money, drawn and signed by A. A. W., payable to the said the S. M. Co., or order, and that said note was endorsed, A. A. W., agent for S. M. Co., and which note was given to the brother of the witness by the said A. A. W., and that he, (the witness,) presented the same for settlement, and a portion of the same was paid by the said company within a short time past; and also offered evidence to the jury by competent witnesses, who had been debtors to the S. M. Co., that they had severally settled and paid to said A. A. W., as agent of the said company, their respective debts, and taken the receipts of said agent, signed, "A. A. W., agent for S. M. Co.;" and that they had never afterwards been called on by said company or its agents, for the payment of such debts.

The plaintiff also offered proof by a number of witnesses, that A. A. W., who signed this note sued upon, acted as the general agent of the company, at the place where its works are carried on, and that for fifteen or eighteen years, he the said A. A. W., had been considered, and up to the time when this note was given, was considered the general agent of said company, and transacted all their business as such of every kind, done at the place where such company's works are situated. The plaintiff also gave in evidence certain deeds and proceedings in Chancery, which showed a conveyance of land under decree of the court to the S. M. Co., but as they are only

inducement to certain parol proof, the reporter deems it unnecessary to insert the same.  The deeds were dated in 1828, 1837 and 1838, and the decree in 1828.

And the plaintiff further proved, that the said A. A. W., negotiated, as agent of the said company, and purchased the lands mentioned in the said deeds to said company.

The plaintiff also, for the purpose of sustaining the issue on his part, offered in evidence by the subscribing witness to this note, sued on in this case, that he was called upon by the said A. A. W., to negotiate for the purchase of the land for which this note was given; that he (the witness,) applied to the plaintiff and negotiated with him in relation to the purchase of said land, and that said witness was under the impression, when called upon by said W., and during the term of his negotiation, and at the time when he applied to the plaintiff in relation to the same, and is now under the impression, that said land was to be, and has been purchased for the use and benefit of the said company, and that said witness resided for many years at the works of the said company, and in its employment, and was familiar with its transactions; and that the said witness had previously been employed by the said A. A. W., as general agent for said company, to negotiate a purchase of other lands which were since conveyed to and are now held by the company, and the instructions of the witness in this purchase, were exactly similar to those in the former, he understanding at that time (although the name of the company was not used by the said A. A. W. at either,) that he was acting for the company. And the plaintiff further proved by said witness, that the object of purchasing the land of the plaintiff, as stated to witness by A. A. W., was to furnish wood and ore for a furnace, which was built on the lands of the company, which furnace was built by hands that were paid at the store of the company, by orders drawn on A. A. W., as agent of said company, in the same manner as the other hands or laborers of said company were paid.  And further, that the said furnace after its erection was carried on for some time by said company.

And the plaintiff for the purpose of further sustaining the issue joined on his part, offered the following extracts from a

book offered in evidence by the defendants, as the minutes of the proceedings of the said company:

"*Resolved,* That to the agent in town be exclusively confined the financial concerns of the company, to whom alone is given the authority to sign and provide for the obligations of the company, and to attend to its pecuniary arrangements." And also the following:

*Resolved,* That *Amos A. Williams* be appointed general superintendent of the company's affairs at the factory, and from said book it appears that said resolutions were passed on the 3rd January 1842, by the said company. It was further offered in evidence by the plaintiff, that several houses had been erected on the lands of the S. M. Co. between the years 1837 and '39, under the superintendence of said A. A. W. as general agent, and that the iron made at the furnace was used in the company's foundry, and if the said furnace had been in successful operation it would have been of great benefit to the S. M. Co.

The defendants to maintain the issue on their parts, first offered in evidence the act of incorporation, passed December session, 1821, chapter 201, and the act supplementary thereto, passed December session, 1825, chapter 169, and also gave in evidence the testimony of *Thomas C. Miller,* a legal competent witness, that he had been storekeeper, agent and a confidential clerk, at the works in this district of said defendants; that their works consisted of a cotton mill, grist mill, saw mill, machine shop, foundry, blacksmith and wheelright shops, and a country store, of which last he had the special charge; that he had been upwards of fifteen years so employed; that they had also made and sold bricks; that Mr. A. A. W. *was during that time general agent of said defendants;* his duties were to superintend the above operations of the defendants' works as aforesaid; that while so acting he did sometimes borrow money for the defendants' use, which was repaid; knows that A. A. W. had purchased land for himself; had purchased land of a *Miss Dorsey;* knows of this, his purchase from *Worthington;* the *Savage Rail Road* was made during his employment at the

works; Mr. A. A. W., of his knowledge, borrowed some mo-
ney of *Miss Dorsey* for which he gave a note, signed as agent
of the defendants; the money was for his own purposes; he,
*Miller*, paid the interest on it without instructions from any
one; the town agent instructed him not to pay it, but he paid
it on his own responsibility; knows of *Holland's* claim against
the company, the defendants is now in controversy; is upon
a note signed by A. A. W., agent S. M. Co; knows for what
the money in said note was borrowed; it was for the *Savage
Rail Road Company;* said defendants have no interest in said
rail road company; knows that defendants refused to have any
thing to do with the furnace; knows that the furnace was *not*
put in operation by the company; it was carried on by A. A.
W., C. D. W. and *Thomas Landsdale;* it was built on the
company's land; the hands were paid by A. A. W. at the
store, by orders drawn by one *Ludd,* superintendent of the
building, on A. A. W., agent S. M. Co.; A. A. W. also paid
at same place the defendants' hands; the defendants had noth-
ing to do with them; business transactions were also done of
his at the same place; the hands were paid as other hands
were, every two weeks; a separate pay roll for each department
of defendants' concerns was made out, containing a list of
hands, number of hands, rate of wages of each and total
amount, then were added up and transmitted to the agent in
town; there never was a pay roll for the furnace, nor was the
amount paid its hands ever transmitted to town; the superin-
tendent of the building, *Mr. Ludd,* drew on A. A. W., agent,
orders for the pay; they were never transmitted to the agent in
town; no buildings other than the furnace were put on the
company's land between the years 1837 and 1840; long before
the furnace was put up, in the dry summer months there was a
deficiency of the needful supply of water for the use of the cot-
ton mill; the lands purchased of *Snowden* were for the posses-
sion of *Hammond's* branch, to be turned into the defendants'
stream, which was done accordingly.  By the cross examina-
tion of *John Holland,* the plaintiff's first witness, it was proved
that since A. A. W's sickness, *George Williams,* the company's

agent in *Baltimore,* paid one note for money borrowed of him; refused to pay another which is now in suit; did not know for whom the land was bought that was purchased of *Worthington.* The defendants also gave in evidence the charter of the *Savage Rail Road Company,* passed December session 1834. The defendants also gave in evidence the two books purporting to contain bye-laws and minutes of the defendants, after having offered evidence by one of the clerks and one of the corporation, that the said bye-laws and minutes, and the parts read in evidence, were the authentic bye-laws of said company and minutes, and the following parts and entries were read therefrom:

*Extracts from the first book of minutes of the Savage Manufacturing Company:*

*Baltimore,* 26*th March,* 1824. At a meeting of the S. M. Co. (a quorum being present) it was resolved, That A. A. W., the agent, be and he is hereby authorised to sign and endorse notes on behalf of the S. M. Co., for the purpose of borrowing from the *Bank of Baltimore,* a sum not exceeding $12,000, and to that end that he be authorised to use the name and seal or the name of said company, and also to sign or endorse notes for the renewal of such loan, so long as the said bank and company may consent and agree.

*Extract from the second book of minutes:*

*Baltimore, March* 5*th,* 1832. General rules for the government of the *Savage Manufacturing Company:*

1st. The agent at the factory shall superintend all the concerns of the company there; he shall collect the rents of the houses, &c. &c.; he shall manage and control the company's store; he shall govern and regulate the farm—and shall superintend the grist mill, saw mill, smith's shop, &c., with power to purchase wheat, beef, hay, corn, &c., necessary for the support of the establishment.

2nd. The agent at the factory shall furnish an annual written statement of all the accounts of money received and disbursed by him, and oftener *if* required by the company, in a plain and

intelligible manner, distinguishing therein the affairs of the rents, the farm, the saw mill, the smith's shop, and the store and grist mill, and shall be and is hereby authorised to employ a clerk in his discretion, and to compensate him accordingly.

6th. At the regular meetings of the company, and at none others, authority may be given for sales and purchases, and for extending improvements or increasing machinery, not hereby delegated to the respective agents. The foregoing rules were unanimously adopted.

*Baltimore, October 7th,* 1833. At a quarterly meeting, the following resolutions were adopted:

"*Resolved,* That no further expenditures of any kind shall be made, nor expenses incurred in any department of the company's works, nntil the whole debt of the company is discharged, except for the conducting of the works in their present condition.

"*Resolved,* That as soon as the *Baltimore and Ohio Rail Road Company* shall have completed their road nearly to the company's ground, a passable wagon road shall be made by the company, so as to intersect the rail road. And the object of this present resolution is expressly declared to be, to negative any views or suggestions tending to the project of making a rail road."

*June 8th,* 1836. At a special meeting of the stockholders upon the representation of the agent in town, as to the importance of the purchase of a small piece of land, belonging to the estate of the late *Thomas Snowden,* which is to be sold at auction on the 14th of this month, it was resolved, that the agent at the factory, be and he is hereby authorised to purchase said land at what he may deem it worth.

The defendants also further offered in evidence by the testimony of *Joseph Plummer,* a competent witness, that *John Holland* had, in a conversation with him about said controversy with said defendants, said that he had loaned $500 to A. A. W.; that A. A. W. had paid him by a check on a bank in *Baltimore;* that subsequently in loaning him other $500, told him

he had not used the check, returned the check and received a note for $1000. Mr. A. A. W. was asked by *Holland* for security; A. A. W. offered him a mortgage of his lands bought of *Dorsey;* he said he would take the company (the defendants,) as security; A. A. W. signed the note accordingly as agent for defendants.

The defendants also gave in evidence the testimony of *Chas. Marean,* a competent witness, who said he had been in the employment of the defendants for six years, from July 1834 to September 1841; that he kept all the company's books in town under the direction of *George Williams,* the town agent; that the defendants never kept a bank account in their name; all bank accounts were kept in the name of *George Williams,* the town agent; never heard of the note offered in evidence in this suit until Mr. A. A. W. was taken sick; when town agent was sick or absent, he *Marean* had sole charge of the company's concerns; never knew of any transaction of this kind; had it been a transaction of these defendants, he certainly would have known it; he kept the account of the transactions of the company; accounts were made up of each department once a year; accounts always made up in town; the company kept no bank account; he had nothing to do with A. A. W.'s accounts; A. A. W. drew the money for paying the hands; it was sent out some times by *Miller* or other trust-worthy persons; *Miller* made nearly all the purchases for the store; the furnace was not built by the company; no monies were ever sent out for that purpose; the money sent out was to pay defendant's hands; not to put up the furnace; whatever defendant's pay roll required, was sent out; every department's accounts were distinguished and separate; would know if the furnace account had been included; the furnace was complete and in operation a little while; there never was any thing in the accounts that included expenditures for the furnace; each pay list would shew its department of manufacturing; no agent for the furnace; no pay roll for it; the iron for the foundry was purchased in town and sent out; he would have remembered any drafts drawn in favor of the furnace.

On cross examination of *Snowden*, he testified that before the purchase of his land, *George Williams*, the town agent, came out and walked over the property; that he was paid for it by settling his bill and taking cash for balance.

The defendants further to support the issue on their parts, gave in evidence the following bond of conveyance, having, on the cross examination of *Tristram S. Dorsey*, a witness thereto, proved that the same was signed, sealed and delivered by the plaintiff, as thereby appears, to wit:

"*Know all men by these presents*, That I, *Zachariah H. Worthington*, of *Montgomery* county and *State of Maryland*, are held and firmly bound unto *Amos A. Williams*, of *Anne Arundel* county and State aforesaid, in the full and just sum of eight thousand dollars, lawful money, to be paid to the said *Amos A. Williams*, or to his certain attorney, executors, administrators or assigns, to the payment whereof, I bind myself, my heirs, executors and administrators, firmly by these presents, sealed with my seal, and dated this 22nd day of April, in the year of our Lord one thousand eight hundred and thirty-nine.

"Whereas, the said *Zachariah H. Worthington*, as executor of the last will and testament of his father, *William Worthington*, late of *Montgomery* county aforesaid, deceased, did, on the eleventh day of March, one thousand eight hundred and thirty-nine, pursuant to the power and authority vested in him by the last will and testament aforesaid, sell to the said *Amos A. Williams*, and contract and agree to grant and convey, or to cause and procure to be granted and conveyed to him, his heirs and assigns, all that part of a tract or parcel of land, lying and being in *Anne Arundel* county aforesaid, called *Thomas* and *Elizabeth*, whereof the above named *William Worthington* died seized, which is contained within the metes and bounds, courses and distances, following, that is to say, beginning for the same part at a stone planted, &c. In consideration of the sum of $4,100, one-third part whereof paid by the said A. A. W. to the said Z. H. W. before the execution of this bond, and the remaining two-thirds secured by two promissory notes, dated the aforesaid 11th March 1839, drawn

by the said A. A. W. and the S. M. Co., to and in favor of the said Z. H. W., as executor of the said W. W., deceased, or order, for the sum of $1,366⅔, each one of them payable at one year, and the other at two years after date, which notes bear interest; the receipt and payment of which said sum of $1,366⅔, and the delivery to him of the two promissory notes above recited or referred to, the obligor in this bond doth hereby acknowledge.

"Now the condition of the aforegoing obligation is such, that if upon payment of the residue of the purchase or consideration money, and interest secured by the above recited promissory notes, at the times limited by said notes for the payment of the same, the said Z. H. W. do and shall well and sufficiently grant and convey, or cause and procure to be granted and conveyed unto the said A. A. W., his heirs and assigns forever, the two parts of a tract or parcels of land above described, with the appurtenances, having first procured a ratification of such sale according to law, and that by such deed or deeds of conveyance and assurance in the law, as shall or may be reasonably advised or devised, and required by the said A. A. W., his heirs or assigns, or his or their counsel; and if until such conveyance be made, perfected and delivered, or until default be made in the payment of the residue of the purchase money and interest mentioned, to be secured by the aforesaid promissory notes, or of some part thereof, at the times limited by said notes for the payment of the land, the said A. A. W., his heirs and assigns, be suffered and permitted, peaceably and quietly, to enter into, have, hold and enjoy the parts of a tract of land and premises, so as aforesaid sold and contracted, to be conveyed, with the appurtenances, without any manner of let or hindrance or interruption, of, from or by any person or persons, claiming legally or equitably, any estate or interest therein, or right or title thereto, through, by or under the within named *William Worthington;* then, and in those events, the foregoing obligation to be void and of no effect, otherwise to be and remain of full force and virtue in law.

ZACHARIAH H. WORTHINGTON, (Seal.)"

It was admitted by the plaintiff and defendants, that the note given in evidence by the plaintiff, is one of the notes referred to in the said bond of conveyance, and that it was given to secure the payment in part of the purchase money for the land therein described.

The S. M. Co., defendants, then moved the court for their opinion and direction to the jury:

1. That the promissory note offered in evidence by the plaintiff, is not the note of the said *Savage Manufacturing Company*, and that they are not legal parties thereto.

2. That if the jury find from the evidence that no consideration passed from the plaintiff to the company aforesaid, then the said company are not responsible on the note offered in evidence as aforesaid, unless the jury further find from the evidence, that the said A. A. W. had authority to bind the company, by signing the said note as the agent thereof, or should find that there was a subsequent ratification or adoption of such signing by the company.

3. That if the jury find from the evidence that the note offered in evidence by the plaintiff, was given to secure the payment of the money therein stated, for a purchase of land made by and on behalf of A. A. W., then the said company are not bound therefor, the payment thereof, by reason of their legal incapacity to become a security for the fulfilment of the contract of another.

4. That if the jury find from the evidence that the note aforesaid, was given to secure the payment of the money therein stated, for a purchase of land made by and on behalf of A. A. W., then the said company are not bound for the payment thereof, unless the jury further find, that all the proprietors of stock in said company, by themselves or their authorised agents or guardians, assented to become security for the fulfilment of the said contract of A. A. W.

5. That if the jury find from the evidence that the note offered in evidence as aforesaid, was given to secure the payment of the money therein stated, for a purchase of land made by and on behalf of A. A. W., then the said company are not

bound for the payment thereof, unless the jury further find that the proprietors of two-thirds of the stock of said company in value and amount, assented that the said company should become security for the fulfilment of the said contract of A. A. W.

6. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold real estate and other property, for the purpose of carrying on manufacturing, as set out in said acts, and were also authorised by said acts, to appoint officers and agents in the prosecution of these objects; and further find that the said company did hold lands and other property, useful and convenient for their purposes, and did appoint A. A. W., as agent to superintend their operations; that such purchases, operations and appointments did not authorise the said A. A. W. to bind the said company to the payment of the sum specified in the promissory note, which has been offered in evidence in this case; provided the jury shall further find that the whole and only consideration of said note was land sold, or intended to be sold by the plaintiff to the said A. A. W., and that the plaintiff took said note from him, with knowledge that the same was intended as in payment, or in part payment, or as a security for the payment in whole or in part of the purchase money for such land.

7. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold real estate and other property, for the purpose of carrying on manufacturing, as set out in said acts, and were also authorised by said acts, to appoint officers and agents in the prosecution of these objects; and further find that the said company did hold lands and other property, useful and convenient for their purposes, and did appoint A. A. W., as agent to superintend their operations; that such operations, purchases and appointment did not authorise the said A. A. W. to bind the said company to the payment of the sum specified in the promissory note, which has been offered in evidence in this case; provided the jury shall further find that the whole and only consideration of said note was land sold, or intended to be

sold by the plaintiff to the said A. A. W., and that the plaintiff took said note from him, with knowledge that the same was intended as in payment, or in part payment, or as a security for the payment in whole or in part for the purchase money for said land, unless the jury further find that the said A. A. W. was specially authorised by the said company to bind them by acts beyond the scope of his general agency, in the particular business carried on by the company, or should find that there was a subsequent adoption or ratification of such acts by the said company.

8. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold real estate and other property, for the purpose of carrying on manufacturing, as set out in said acts, and were also authorised by said acts, to appoint officers and agents in the prosecution of those objects; and further find that the said company did hold land and other property, useful and convenient for their purposes, and did appoint A. A. W. an agent to superintend their operations; that such purchases, operations and appointment did not authorise the said A. A. W. to purchase lands for the company, without their special authority, either previously given or subsequently ratified or adopted.

9. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold real estate and other property, for the purpose of carrying on manufacturing, as set out in said acts, and were authorised by said acts, to appoint officers and agents in the prosecution of those objects; and further find that the said company did hold lands and other property, useful and convenient for their purposes, and did appoint A. A. W. an agent to superintend their operations; that such purchases, operations and appointment did not authorise the said A. A. W. to purchase lands on his own account, and bind the company as his security, for the payment of the purchase money, without their special authority, either previously given or subsequently ratified or adopted.

10. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold

real estate and other property, for the purpose of carrying on manufacturing, as set out in said acts, and were also authorised by said acts, to appoint officers and agents in the prosecution of those objects; and further find that the said company did hold land and other property, useful and convenient for their purposes, and did appoint A. A. W., as agent to superintend their operations; that such operations, purchases and appointment did not authorise the said A. A. W. to purchase lands on his own account, and bind the company as his security, for the payment of the purchase money, without their special authority, either previously given or subsequently ratified or adopted, and that there is no evidence in this case of any such special authority.

11. That if the jury find from the evidence that the S. M. Co. was, by Acts of Assembly, authorised to purchase and hold real estate and other property, for the purpose of carrying on manufacturing, as set out in such acts; and were also authorised by such acts, to appoint officers and agents in the prosecution of those objects; and further find that the said company did hold lands and other property, useful and convenient for their purposes, and did appoint A. A. W., as agent to superintend their operations; that such purchases, operations and appointment did not authorse the said A. A. W. to purchase lands on his own account, and bind the company as his security, for the payment of the purchase money, without their special authority, either previously given or subsequently adopted and ratified, and that there is no evidence in this case of any such special authority, nor any evidence from which such authority can be legally inferred or implied.

12. That if the jury find from the evidence that A. A. W. was the agent of the company for superintending their operations as manufacturers, the burthen of shewing that the said A. A. W. had authority to bind them as a security, for the payment of the sum of money specified in the promissory note, which has been offered in evidence in this case, rests upon the plaintiff.

13. That if the jury find from the evidence that the note offered in evidence was given to the plaintiff to secure the payment of a portion of the purchase money, for land sold by the plaintiff to A. A. W., and that the said company had no interest in said purchase, then the plaintiff has no right to recover the amount of such note from the company, although the jury should further find that the said A. A. W. was the agent of the company, superintending those works, grounds, and business as manufacturers of cotton goods, and carrying on other concerns auxiliary thereto.

14. That by the act incorporating the said Manufacturing Company, the objects of such incorporation is declared to be the manufacturing and vending cotton goods, and the carrying on of any other branches of manufactures in their discretion; and the said A. A. W. being shewn by the evidence to be their agent, that unless otherwise proved, his agency is limited to the business of the company, connected with or relating to the objects aforesaid.

15. That the contract for the land to secure the payment of the purchase money, of which the note offered in evidence was given, was the individual contract of A. A. W., and not the contract of the defendants, because the bond of conveyance executed by plaintiff for said land, is the only legal evidence of the character of said contract.

And the court (Dorsey, C. J., Wilkinson and Brewer, A. J.,) gave the directions as asked in the *second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth* and *fourteenth* prayers, but refused the instructions asked for in the *first, twelfth* and *fifteenth* prayers. To which refusal of the court the defendants excepted.

The verdict and judgment being against the defendants, they appealed to this court.

The cause was argued before Stephen, Chambers and Spence, J.

By Williams and W. Schley for the appellants, and
By R. I. Bowie for the appellees.

STEPHEN, J., delivered the opinion of this court.

We think there was error in the opinion of the court in the first bill of exceptions. The principle appears to be well settled, that where a note is executed by an agent, before it is admissible in evidence, it is necessary to prove, not only his signature, but the authority by which it is made. Speaking of the action of *assumpsit* on promissory notes, *Roscoe*, in his treatise on evidence, 174, says: "The making of the note will be proved by proving the handwriting of the defendant, or if made by an agent, by proof of the handwriting, and authority of such agent.

After it was admitted by both plaintiff and defendant, that the note given in evidence by the plaintiff was one of the notes referred to in the bond of conveyance, and that it was given to secure the payment in part of the purchase money for the land therein described, the defendants prayed the court to give several instructions to the jury, all of which were granted except the *first, twelfth* and *fifteenth* prayers; for the refusal to grant which, the defendants excepted.

It seemed to be conceded by the counsel for the appellants in the course of the argument, that the court below were right in refusing the *twelfth* prayer, it is therefore only necessary to decide upon the propriety of rejecting the *first* and the *fifteenth*.

The *first* prayer was, that the promissory note offered in evidence by the plaintiff, was not the note of the said *Savage Manufacturing Company*, and that they were not legal parties thereto. This prayer we think the court ought to have granted. It appears by the bond of conveyance (the execution of which was admitted by the parties,) that the purchase was made by *Williams*, on his own account. The conveyance was to be made to him and his heirs, and there is an express stipulation that he and his heirs shall quietly and peaceably enjoy the property purchased, without any hindrance by the said obligor, or any person claiming under him. The purchase, therefore, being made by him on his own account, and the note being given to secure the payment of the purchase money, the note was invalid and a nullity, so far as the appellants were attempted

to be bound thereby. It being conceded, that by the terms of their charter, they had no power to assume such a responsibility.

The *fifteenth* prayer, we think, also ought to have been granted. The bond of conveyance was the only legal evidence of the nature and character of the contract, and it demonstrated that *Williams*, and not the company, was the purchaser of the land therein specified. Parol evidence was not admissible to vary or contradict it in that respect, as seems to be clear upon authority. See *Ros. Ev. J.* 9, and 12 *John. Rep.* 77, where it is said, that parol evidence is inadmissible to prove that a grant made to one person was intended to be made to another. See also same book, page 488, where it is said, "that parol evidence is inadmissible to show that a lease executed in the name of, and reserving a rent to one person, was intended for the benefit of another."

For these reasons we are of opinion that the judgment of the court below was erroneous, and ought to be reversed.

JUDGMENT REVERSED.