## COUNTY OF WINDSOR,

### FEBRUARY TERM, 1846.

[Continued from Vol. 18, page 370.]

---

### PRESENT,

Hon. STEPHEN ROYCE,
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.
Hon. DANIEL KELLOGG,

---

### HARRIS MINER v. SOLOMON DOWNER, WORCESTER DOWNER AND HORACE DANA.

Where the Plaintiff delivered property to W. Downer and H. Dana, and executed to them, by the name of Downer and Dana, a bill of sale of the property, in which he acknowledged receipt of payment by note, and the note which he received was, by Dana, signed "Downer & Dana," and it appeared in evidence, that there was in existence at that time, doing business, such a firm as "Downer & Dana," consisting of those two individuals, it was held, that the plaintiff could not recover on the note against another firm, of different style, consisting of the same Downer and Dana and a third person, notwithstanding it might appear, that the latter firm was also then doing business at the same place,—there being no testimony, tending, even, to prove that the latter firm had, at any time, done any act, which could have induced the plaintiff to believe, that Downer & Dana had ever been authorized to use

Miner *v.* Downer et al.

their own name and style for the purposes of the other firm;—and that, upon this testimony, it was improperly left to the jury to find, whether the note was executed, and received by the plaintiff, as the note of the latter firm.

ASSUMPSIT on a promissory note, signed "Downer & Dana," for $69,00, and dated November 14, 1837; and the plaintiff alleged, that the defendants were partners, at the date of the note, under the firm of S. & W. Downer & Co., and that the note was given for their benefit, and for property which went to their use, and was, by mistake, signed "Downer & Dana," instead of being signed by the style of the defendants' firm. The declaration contained, also, a count in *indebitatus assumpsit*, for goods &c. sold and delivered to the defendants. Plea, the general issue, and trial by jury,—HEBARD, J., presiding.

On trial the plaintiff gave in evidence the note declared on, signed "Downer & Dana," and proved that the signature was written by the defendant Dana. He also gave evidence, by parol, tending to prove that the defendants, before the date of the note, were co-partners under the firm of S. & W. Downer & Co., and that they so continued for some time after, and that the plaintiff sold and delivered, at the defendants' place of business, a quantity of hogs, which were received by Dana and Worcester Downer, and that the plaintiff received, in payment therefor, the note in suit.

The defendants gave in evidence the written articles of co-partnership between themselves, which bore date November 15, 1837, and also gave in evidence a bill of sale, signed by the plaintiff, which was in these words;—"Sharon, Nov. 14, 1837. Downer & Dana bought of Harris Miner eight hogs, weight 1150 lbs. 6 oz. $69,00. Received pay by note; (*signed*) Harris Miner." The defendants also introduced testimony tending to prove, that a co-partnership existed between Worcester Downer and Dana, by the style of Downer & Dana, for a year previous to the date of the note declared upon, and that the business belonged solely to that firm, or to Dana alone, until the execution of the written articles of co-partnership between the defendants.

The defendants requested the court to instruct the jury, that there was no evidence, which would entitle the plaintiff to recover on the

Miner *v.* Downer et al.

first count in his declaration, and that, if the plaintiff delivered the hogs and received in payment therefor the note in question, he was not entitled to recover in this suit.

But the court charged the jury, that if they found, that the defendants, at the time of the execution of the note and the sale and delivery of the hogs, were in fact co-partners and doing business as such, and the hogs were sold to that firm, and the note, executed by Dana, was executed as and for the note of that firm, and was so received by the plaintiff, the plaintiff was entitled to recover.

Verdict for plaintiff. Exceptions by defendants. After verdict the defendants moved an arrest of judgment for insufficiency of the declaration, and the motion was overuled ; to which decision the defendants also excepted.

*J. Barrett* for defendant.

1. There was no evidence, tending, even, to show that the note was the note of S. & W. Downer & Co., or that the hogs were sold by the plaintiff to that firm, and consequently the jury were not at liberty to infer, that the note was given contrary to its import. *Siffkin* v. *Walker et al.*, 2 Camp. 308. *Holmes* v. *Barton et al.*, 9 Vt. 252. The court erred, in submitting the question to the jury. 3 Vt. 236. 5 Vt. 140, 141.

2. The plaintiff cannot recover upon the second count. Having received the note *in payment* for the hogs, he cannot resort to his claim for goods sold. *Hutchins et al.* v. *Olcott*, 4 Vt. 541.

3. The plaintiff cannot recover on the note in this action, even though the property, for which the note was given, was sold to S. & W. Downer & Co., and went for their benefit. The note was signed by the style of another firm, then in existence, by a member of that other firm, and when both the members of that firm were present, receiving the property for which the note was given. There is no pretence, that any fraud was practiced. If the note binds any one, it binds only the partnership, whose name it bears. 2 Camp. 308. 9 Vt. 252. *Emly et al.* v. *Lye et al.*, 15 East 7. Story on Part. 214.

4. The motion in arrest should have prevailed. Gould's Pl. 523. 8 Vt. 480, 501.

*J. S. Marcy* for plaintiff.

The parol testimony, introduced by the plaintiff, tended to support both counts in the declaration, and the question as to its weight was for the jury to determine, and was properly left to them. The manner, in which the bill of sale and note were drawn and executed, is matter of evidence, merely, to be weighed with all the other evidence in the case. A variance, or mistake, in the names of parties to a contract, is not fatal to their contract; 1 U. S. Dig. 106, 187, 188. *Medway Manuf. Co.* v. *Adams et al.*, 10 Mass. 360; and it makes no difference, which party to the contract is misdescribed. In this case it was properly left to the jury to decide, upon the whole evidence, whether the note was in fact, if not in appearance, the contract of the defendants.

The opinion of the court was delivered by

BENNETT, J. The plaintiff in this suit has declared, in his first count, on a promissory note, dated Nov. 14, 1837, against the defendants, under the name of S. & W. Downer & Co. This note, he alleges, was, through mistake, signed Downer & Dana, instead of S. & W. Downer & Co., as it should have been, and was intended to be. The court below were requested to charge the jury,—1, That there was no evidence, from which the jury could find for the plaintiff on the first count ;—2, That if the plaintiff, after delivering the hogs, received this note in payment, and receipted his bill for them, he was not entitled to recover on either count. We shall consider only the first of these points.

It appeared from the written articles of copartnership, that the defendants formed their business connection on the day after the note was given. The case finds, that the plaintiff gave parol testimony, tending to prove that in fact the defendants had been partners, under the name of S. & W. Downer & Co., before the date of the note, and that they so continued for some time after. Parol evidence was also given, tending to prove that there had also existed another partnership, composed of two of the defendants, but under the name and style of Downer & Dana. The hogs were delivered at the defendants' place of business, but were received by Dana & Worcester Downer, who composed the firm of Downer and Dana, and the bill of sale was made out in this latter name; and a note, signed in the

3

same name, was received in payment. The court instructed the jury, that if they found that the defendants were in fact partners and doing business as such, at the time of the sale and delivery of these hogs and the making of this note, and that the hogs were sold to said company and the note executed therefor, and received as the note of said company, the plaintiff was entitled to recover. Did the testimony in the case entitle the plaintiff to such a charge? We think not.

It is well settled, that if a person advances money or delivers property to a firm, and takes the separate security of one partner, in his individual name, the firm cannot be sued upon it. In *Siffkin* v. *Walker*, 2 Camp. 308, the declaration stated, that the defendants made their certain promissory note, signed by Walker for himself and Rowelstone, whereby they promised to pay, &c. The plaintiff proposed to show, that both defendants were indebted to him on a charter-party of affreightment, and that the note in question was given by Walker in satisfaction of this joint debt. Lord Ellenborough used this pertinent language,—" How can I say, that a note, made and signed by one in his own name, is the note of him and another person, neither mentioned, or referred to?" He adds,—" The import and legal effect of a written instrument must be gathered from the terms, in which it is expressed; and I must treat this note as a separate security for a joint debt." So, in *Emly* v. *Lye et al.*, 15 East 7, it appeared, that George Lye and E. L. Lye were partners, and their book-keeper was accustomed to receive bills of exchange from his employers, sometimes drawn in the name of the firm, sometimes in the name of G. Lye alone, and at other times in that of E. L. Lye alone,—as were the bills in question. These bills had been discounted from time to time by a broker, unacquainted with the defendants, who made no distinction between them, supposing them all drawn on the partnership account. The proceeds of the bills were in fact paid by the book-keeper to the partnership account, and the discount was allowed him in his account with the partnership. It was held, that E. L. Lye alone was liable on those bills drawn by him individually, and that the names of others could not be supplied by intendment, in order to charge them;—and even farther, that there could be no recovery on the *money counts*, as the broker was in no way induced by the defendants to believe it was a partnership

concern, and to lend his money on that account. See, also, *Ex parte Hunter*, 1 Atk. 223 ; *Stackpole* v. *Arnold*, 11 Mass. 27 ; Story on Part. chap. 8, § 134, p. 222.

In the case of *Trueman et al.* v. *Loder*, 11 Ad. & El. 589, [39 E. C. L. 178,] the defendant, Loder, was a merchant residing at St. Petersburgh, and carried on business at London, through and in the name of one H., who was without capital himself, and who was regarded in London as only the representative of the defendant, whose name was painted on the outside of the counting house, and who was aware of the manner in which the business was transacted. H., having received notice from the defendant, that his services would not be required much longer, soon after purchased of the plaintiff a quantity of tallow, using his own name, as formerly. He intended to contract on his own account, but the plaintiff did not so understand it, supposing him still to represent the defendant, as before. It was contended, that, as H. had, after receiving the notice, commenced business for himself, the sale was made exclusively on his account. But it was *held*, that, since the plaintiff had no notice, that H. had ceased to represent the defendant, the latter was still liable. It was also contended, that, since the contract was made by H. and his name was incorporated in it, parol evidence was inadmissible, to show that the contract was in reality that of the defendant, and not of H. individually,—as that would vary the contract. But the court said, "Parol evidence was always necessary, to show that the person sued was the person contracting. Whether he does it in his own name, or in that of another, or in some fictitious name, and whether the contract is signed by his own hand, or by his agent's, are enquiries not differing in their nature from the question, ' who is the person, that has just ordered goods in a shop' ? " If the *identity* of the person is established, it is not *varying* the contract, to show that he used a name not his own.

This case was considered as not opposed to *Siffkin* v. *Walker*, or *Emly* v. *Lye*, but distinguished from them, on the ground, that, in both those cases, the company were carrying on business, at the very time, in the name of their firms ; and it did not appear, that they had ever done any act, *tending to lead the contracting party to believe, that the partnership had authorised the individual partners to employ their private names for partnership purposes.* But in this

case the business was done in the name of H., apparently as principal, and with the knowledge of the defendant; and, for all legal purposes, the name H. signified Loder, the defendant.

In the case at bar Downer & Dana had been in partnership for a year before the note was given, and no evidence was offered, to show a dissolution at that time. Neither does it appear, that the firm of S. & W. Downer & Co. had, at any time, done any act, which could have induced the plaintiff to believe, that Downer & Dana had ever been authorized to use their own name and style for the business purposes of the other firm. Nor does the evidence tend to show, that Dana intended to bind the firm of S. & W. Downer & Co., when he signed this note, or that the plaintiff had any reason to suppose, that he was getting the security of Solomon Downer, superadded to that of Downer & Dana. The hogs were received by Downer & Dana, and the note, signed by Dana in the name of their firm, was received in payment; and the bill was made out, stating that Downer & Dana had bought the hogs of the plaintiff,—which bill was receipted at the time by him. And evidence tending to prove, that the defendants were copartners under the name of S. & W. Downer & Co., when the note was given, and that the hogs were received by Downer & Dana at the defendants' place of business, has no tendency to show, that the firm of S. & W. Downer & Co. ever authorized the firm of Downer & Dana to use their own name for the common purposes of the former, and furnished no reason to the plaintiff to suppose he was receiving the note of S. & W. Downer & Co., in place of the one he did receive.

In *Trueman* v. *Loder*, cited above, the defendant cited several cases, to establish this position,—"That the fact, whether an agent, or partner, bound himself alone, or his principal, or firm, was to be determined by his intention, at the time, to deal for himself, or his principal, or the firm." But Lord Denman, Ch. J., says,—"On examining all these cases, it will be found, that the contracting party was carrying on two different concerns at the same time, one for himself, and one for his principal, or the firm; and the world would know him in two different capacities; and every one dealing with him would be bound to inquire, in which capacity he was acting on any particular occasion;"—39 E. C. L. 180,—where are cited *Ex parte Bolitho*, 1 Buck 100; *Bank of Scotland* v. *Watson*, 1 Dow

40. But in the case before us there is no pretence, that Downer & Dana were, at this time, carrying on two concerns under that name, —one for themselves and one for S. & W. Downer & Co. No instance is shown, in which the firm of S. & W. Downer & Co. have, in the transaction of their business, adopted the name of Downer & Dana; and there is no evidence to show, that in this instance they used it as a *feigned name, or otherwise.*

No doubt it might be competent, to show that Downer & Dana and S. & W. Downer & Co. meant the same individuals; but it is quite a different question, whether, *at law*, the plaintiff could be permitted to show, by parol, that the note in question was signed Downer & Dana by mistake, instead of S. & W. Downer & Co. In *Jackson v. Hart*, 12 Johns. 77, parol evidence was held inadmissible, to show that letters patent, granted to George Houseman in his own name, and who was a real person, were intended to be granted to another individual, named George Hosmer. The rule is indisputable, that parol evidence is inadmissible to contradict, or vary, a written contract of clear, certain and unequivocal import. In the case last cited the court say, that the rule, as to explaining latent ambiguities, has no application.

It is farther to be observed, that between the defendants, in the present case, there existed written articles of copartnership, executed the day after the note was given, and which are made a part of the case. This partnership took effect, by intendment, on the day of the date of these articles. Parol evidence is inadmissible to contradict this intendment. Story on Part. § 194. *Williams v. Jones,* 5 B. & C. 108. The articles of copartnership recognized no power in Dana to bind this firm by any note he might have executed previously, under whatever name. As between these partners, all parol negotiations, or agreements, whether prior or cotemporaneous, relative to the formation of the partnership, are merged in these written articles. *Reed v. Wood,* 9 Vt. 285. *Gardner Manufacturing Co. v. Heald,* 5 Greenl. 381. *Brigham v. Rogers,* 17 Mass. 571. *Austin v. Sawyer,* 9 Cow. 39. But if, prior to the execution of these articles, the defendants had held themselves out as partners, and had, as such, acquired credit, they doubtless would be liable to any person trusting them.

We discover no evidence, in this case, to charge Solomon Downer. The note was not, on its face, the note of his firm ; and there is no evidence to show he ever authorized Dana to use the name of Downer & Dana, in making contracts for them, or that Dana designed to bind the firm of S. & W. Downer & Co., or that the plaintiff so understood the transaction.

We think, for these reasons, the court below erred in submitting to the jury, to find whether this was the note of S. & W. Downer & Co.

Whether a state of facts could be made out, sufficient to entitle the plaintiff to recover of these three defendants, it is unnecessary to decide. Neither are we inclined to pass upon the motion in arrest ; but we simply reverse the judgment of the county court, and remand the case to that court to be farther proceeded with.