WILLIAMS, Respondent, v. CARPENTER, Appellant.

1. Hunt, United States recorder of land titles, upon proof of inhabitation, cultivation and possession made before him under the act of Congress of May 26, 1824, issued a certificate of confirmation to one *Louis* Lacroix. *Held*, that the title thus evidenced would not be made to enure to one *Joseph* Lacroix or his legal representatives by showing that it was said *Joseph* and not *Louis* that appeared before the recorder and made proof under the act of May 26, 1824, and that the certificate was issued by mistake to Louis instead of Joseph Lacroix.

2. Hunt's minutes of testimony taken by the act of Congress of May 26, 1824, are not admissible in evidence except to prove such facts as may be proved by hearsay. If professedly admitted to prove such facts, care should be taken that they are not used for other and illegal purposes.

*Appeal from St. Louis Land Court.*

This was an action in the nature of an action of ejectment to recover possession of a portion of a lot of one by forty arpens in the Grand Prairie common field, near St. Louis, being the lot covered by United States survey No. 1664. Both plaintiff and defendant claim title under the proof made before Recorder Hunt on the 3d of March, 1825, pursuant to the act of Congress of May 26, 1824. The plaintiff introduced in evidence, against the objection of defendant, certified copies of extracts from the registry of certificates of confirmation issued by Recorder Hunt under the act of May 26, 1824. From these it appeared that on the 3d of March, 1825, said Hunt had issued a certificate of confirmation to Louis Lacroix of a lot of one by forty arpens in the Grand Prairie, bounded on the north by Pierre Barribeau, and on the south by Paul Lagrandeur (alias Guitard) ; also that on the same day he issued a certificate of confirmation to Pierre Barribeau for a lot in the same prairie, bounded south by *Joseph* Lacroix. The court also admitted in evidence Hunt's minutes of testimony taken in proof of the claims of *Louis* Lacroix and Pierre Barribeau. Barribeau testified for Louis Lacroix. The entry of testimony in support of the claim of Pierre Barribeau is as follows: " Pierre Barribeau claiming one and a half by forty arpens in Big Prairie, St. Louis, bounded on the north by a lot formerly belonging to Benito Vasquez, on the south by Joseph Lacroix, and on the east and west by vacant land. Louis Lacroix, being duly sworn, says he knows said lot, and that the claimant Barribeau has been in possession of the same for thirty years and cultivated the same for ten or twelve consecutive years. [Signed] Joseph $\overset{\text{his}}{\times}$ Lacroix. Test: M. P. Leduc." As stated in the bill of exceptions, the copies of these minutes " were admitted by the court as a part of said confirmations, but not as any evidence of the fact of possession by either of the confirmees prior to December 20, 1803, or of any other fact therein stated except as to location and boundaries."

The plaintiff also read in evidence, against the objections of defendant, the report of Loughborough, the surveyor general, to the commissioner of the general land office, upon said survey No. 1664. This report is dated January 30, 1855, and in it the surveyor general sets forth various reasons for believing that the name *Louis* Lacroix had been used mistakenly for *Joseph* Lacroix. Testimony was adduced with a view to show that no person named Lacroix besides Joseph Lacroix resided in St. Louis prior to 1803. It appeared, however, that a person named *Louis* Lacroix had lived in St. Louis.

The plaintiff claims title under Joseph Lacroix; the defendant under Louis Lacroix. The court, at the instance of the plaintiff, instructed the jury as follows: "1. If the jury find from the evidence that the person who presented the claim for the tract of land in controversy to Theodore Hunt, recorder of land titles, on the 3d of March, 1825, was in fact Joseph Lacroix, and that the confirmation certificate was issued to Louis Lacroix upon proof of the possession of Joseph Lacroix, and that Joseph Lacroix was the person who possessed or cultivated the lot in the Grand Prairie commonfield adjoining P. Barribeau, as the same is described in the confirmation, then the jury will find for the plaintiff, if he has shown a derivative title to the right and title of Joseph Lacroix in the premises sued for. 2. If the jury find for the plaintiff, they will assess as damages the rents and profits of the land from the time of the commencement of this suit to this time, and also assess the value of monthly rents of the land."

The defendant asked the court to instruct the jury as follows: "1. The claim to the right of the possession of the premises in question set up by the plaintiff is not supported by the proof of cultivation by Louis Lacroix, made before the recorder of land titles, and tabular lists of the same, which were given in evidence by plaintiff; and unless the jury find from the evidence that the plaintiff has proved clearly and beyond a doubt that Joseph Lacroix inhabited, cultivated or

possessed the premises in question prior to the 20th of December, 1803, they must find for the defendant. 2. The plaintiff has not shown by any evidence that the title to the land in question as furnished by the proof of cultivation and possession in the name of Louis Lacroix before the United States recorder of land titles, and the certificate of confirmation issued by said recorder to Louis Lacroix, which were given in evidence, enured to the benefit of Joseph Lacroix or his legal representatives. 3. If the jury find from the evidence that the land in question is part of a commonfield lot in St. Louis Grand Prairie of one by forty arpens, and which lot was inhabited, cultivated or possessed by Louis Lacroix prior to the 20th December, 1803, then the title to the same was confirmed to Louis Lacroix by act of Congress of 13th June, 1812, which was given in evidence, and if so confirmed to Louis Lacroix then the plaintiff is not entitled to recover. 4. The confirmation certificate issued to Louis Lacroix by the United States recorder of land titles, which was given in evidence by defendant, is *prima facie* evidence of title in Louis Lacroix of a common field lot in the Grand Prairie of one by forty arpens, and is *prima facie* evidence of all the facts necessary to prove a confirmation by the act of Congress of 13th June, 1812, given in evidence by defendant; and the United States survey No. 1664, given in evidence by defendant, is *prima facie* evidence of the location, extent and boundaries of the same. 5. If the jury find from the evidence that the land in question is the same tract or lot of land or a part of the same that is mentioned and embraced in the confirmation certificate issued to Louis Lacroix by the United States recorder of land titles, which was given in evidence by defendant, then the plaintiff is not entitled to recover in this suit, unless they also find that the plaintiff has proved clearly and beyond doubt that it was Joseph Lacroix and not Louis Lacroix that made the application and proof of cultivation and possession of said land before the recorder of land titles, as shown by the copy of said proof given in evidence by plaintiff, and confirmation

certificate given in evidence by the defendant.  6. The fact of Pierre Barribeau, in his description of boundaries, calling for Joseph Lacroix for his south boundary does not furnish any evidence of title in Joseph Lacroix to the lot joining said Barribeau on his south or to the land in question, nor in any way affect any title that may have existed in Louis Lacroix to the same lot at that time, or since, but is evidence only upon the question of location.  7. The several deeds which were given in evidence by plaintiff, purporting to show a conveyance of a common field lot of one by forty arpens in the Grand Prairie, from the heirs of Joseph Lacroix through the persons therein named as grantees down to plaintiff, are not to be considered by the jury as furnishing evidence of themselves of title in said Joseph Lacroix or his representatives to such common field lot, unless they also find that Joseph Lacroix was the person to whom said land was actually confirmed."  Of these instructions the court gave those numbered one and two, and refused the others.

The jury found for the plaintiff.

*Krum & Harding* and *McLure*, for appellant.

I. The admission of Hunt's minutes was erroneous.  It was not offered to prove the location or boundaries of the land sued for, but to prove that *Joseph* Lacroix was entitled to the confirmation that was made in the name of Louis Lacroix.  (17 Mo. 310 ; 21 Mo. 243 ; 27 Mo. 55.)

II. The report of the surveyor general was not competent evidence to prove any material fact in issue in the cause. (Blumenthal v. Roll, 24 Mo. 113.)

III. The first instruction given in evidence for the plaintiff is erroneous.  There was no evidence upon which to base such an instruction.  There was no evidence tending to prove that Joseph Lacroix presented the claim for the land in dispute before the recorder.  The plaintiff does not seek to recover on the ground of possession and cultivation prior to December 20, 1803.  There is no patent, confirmation or survey in favor of Joseph Lacroix.  If plaintiff seeks the ben-

efit of this confirmation by reason of any fraud, accident or mistake in the granting of it, he must make a proper case for such relief and ask to reform the confirmation. (Magwire v. Vice, 20 Mo. 429.) The instructions asked by the defendant should have been given.

IV. The court erred in admitting the declarations of Joseph Lacroix.

*Hill* and *Whittelsey*, for respondent.

I. The court did not err in admitting the declarations of Joseph Lacroix. (1 Greenl. Ev. § 145, 131, 103, 120; 7 Monr. 234; 2 Barr, 55; 18 Ala. 822; 4 McCord, 262; 2 J. J. Marsh. 380; 11 Pick. 308, 362; 13 Wend. 536; 3 A. K. Marsh. 394.)

II. Hunt's minutes of testimony were competent evidence. Defendant's deeds refer to Hunt's minutes. (See Acts of Congress of March 3, 1805, of April 21, 106; June 13, 1812; March 3, 1813; April 12, 1814; April 29, 1816; May 26, 1824; McGill v. Somers, 15 Mo. 80; 9 Mo. 477; 11 Mo. 16; 21 Mo. 243; 2 Ad. & El. 171, 182; 27 Mo. ——; 18 Mo. 492.)

III. Plaintiff could show what person made the proof before the recorder. The tabular list was only *prima facie* evidence. The court was authorized to admit evidence to show that Louis Lacroix meant Joseph Lacroix. If there be any omission in the instruction given for plaintiff, it was cured by that given for defendant.

SCOTT, Judge, delivered the opinion of the court.

As the title to all the land in the state of Missouri was originally in the Spanish or French governments or the United States, there was no error in permitting the plaintiff to read evidence showing that the title to the land in controversy had passed from the United States, as without such evidence he could have had no standing in court. Whether he showed that he had acquired that title was a matter to be subsequently determined, and if he did not do this, as he

must have failed in his action, the introduction of the evidence would have caused no prejudice to the opposite party. Both parties claimed the title evidenced by the certificate of confirmation, and the question was as to the enurement of that title. From the instructions given for the plaintiff it appears that he based his right to a recovery upon the certificate of confirmation and the evidence explaining it. As neither party claimed behind the certificate, that may be regarded as the highest evidence of title which could emanate from the government. Had there been a patent on the certificate, that could not have varied their rights; they would have been adjusted on the same ground as on the certificate. Here then is a title that has passed from the government, and the question is, to whom does it belong? The certificate was issued to Louis Lacroix, and Joseph Lacroix, or those claiming under him, maintain that the certificate was granted by mistake to Louis and that Joseph was the person intended. The case was tried on the theory that Louis and Joseph Lacroix were different persons, and there was evidence showing that there were two such individuals in St. Louis. Now, on this state of facts, can Joseph Lacroix recover the land from Louis by showing that he was the person intended and the one to whom the certificate was granted? If Louis Lacroix was a real person and the certificate was granted to him, though by mistake, could any title have been passed to Joseph Lacroix? Although Joseph might have been entitled to receive the certificate, yet in fact has he obtained it? On what principle, in this form of action, can the title be taken from him to whom it has been granted by law and transferred to another? Where a grant, though by mistake, is made to one, another can not divest him of his title by showing that he was the person for whom the bounty was intended. If the government, on a false suggestion or by mistake, has granted a patent, it can only be avoided by *scire facias* or other suitable proceeding instituted directly for that purpose. It can not be done in a collateral action. The circumstan-

ces of this case do not warrant the application of the principle that by parol evidence one may show that he is the person named as a grantee or patentee. In the case of Jackson v. Lawton, 10 John. 23, it is said that if a patent issued by mistake, or upon false suggestions, it is voidable only, and unless letters patent are absolutely void on the face of them, or the issuing them was without authority, or was prohibited by statute, they can only be avoided in a regular course of pleading in which the fraud, irregularity or mistake is directly put in issue. The case of Jackson v. Hart, 12 John. 77, illustrates and sustains the foregoing views. There the patent was to George Houseman, under which the plaintiff claimed title. The defendant offered to prove that George Houseman, the patentee, never enlisted nor served in the company of the regiment to the members of which only land was by law to be patented, but that a man by the name of George Hosmer did enlist and serve in that regiment; that he was the person intended by the patent, and that by mistake it was issued to George Houseman. This evidence was rejected and there was a judgment for the plaintiff. It was observed that a latent ambiguity may be explained by parol proof in order to elucidate and explain written words of doubtful sense; as, if a grant be made to John Smith, and there be several persons of that name, parol evidence is admissible to explain which of the persons bearing the same name was intended. So parol evidence would be admissible to prove that George Houseman and George Hosmer were the same person. But certainly it is not explaining a latent ambiguity to prove that a grant to George Houseman, a real person, was intended for another person of the name of George Hosmer, and in that case it was held that a patent, not void but which had been issued by mistake or on an insufficient suggestion, can only be avoided by *scire facias* or other proceeding for that purpose in chancery; that it can not be impeached in a collateral action, as by showing that the patentee intended was a different person and of a differ-

ent name from the one mentioned in the patent. In the case of Jackson v. Goes, 13 John. 518, where evidence was received on the part of the defendant to show that a person claiming as patentee was not the patentee intended by the grant, the testimony was that there was another of the same name with him who claimed as patentee and that he was the person intended. This case is not [at] all inconsistent with that of Hart v. Jackson above cited. In the case of Jackson v. Stanley, 10 John. 133, where parol evidence was received to show a patent void by reason of a mistake in the name of the patentee, it was not pretended that upon the proof of such mistake, the title would enure to the person intended. as patentee, but that it would remain in the state.

From the view we take of this case as presented by the record, it would seem unnecessary to determine the other questions made in the court below, but as they may afterwards arise we will now notice them. Had the ground on which the plaintiff placed his right to recover been tenable, we know no principle which would have warranted the admission in evidence of the report of the surveyor general. This report is nothing more than an argument. The officer no doubt sincerely entertained the views he expressed, but he had no authority to make an argument for the purpose of being read in evidence. If he knew the facts stated in his argument, he might have been examined as a witness, and the counsel in the cause would have made the comments to the jury which they justified. If he knew no facts, his statements were mere hearsay, and that unsupported by an oath. If counsel thought the argument a good one, they might have adopted it as a part of their own, and then it would have been understood by the jury. When such a paper is read as evidence, in what light is it to be viewed by the jury? Not knowing how to appreciate it, the use of it in such a way may be the means of misleading them.

There was no dispute about localities or boundaries in the cause. There was then no necessity for reading the depositions preserved in the recorder's minutes. If this evidence

30—VOL. XXVIII.

has been merely unnecessary, it would scarcely have been worth while to notice its introduction; but as the party using the recorder's minutes of evidence always expects to gain an undue advantage thereby, they should never be read when it is unnecessary to do so. The court must see the object of the party in using this evidence, and knowing that it is an undue one, though professedly for another purpose, care will be taken that the end in view is not attained, and the attempt to use it illegally should be made to recoil on him who makes it.

We are not aware of any principle which sanctioned the evidence of those witnesses who testified that they had heard Joseph Lacroix say that he had fixed or proved up his claim, and such like conversations.

Reversed and remanded; the other judges concur.

RICHARDSON, Judge. In my opinion, if the confirmation was to Louis Lacroix and was so intended by the recorder, Joseph Lacroix could not claim the benefit of it by showing that it ought to have been to him. But if Joseph Lacroix was the person who appeared before the recorder and made the proofs, and the recorder intended to give him the certificate of confirmation, but by a mere mistake wrote the name Louis instead of Joseph, then Joseph Lacroix or his representatives, on showing these facts, ought to be permitted to take the benefit of the certificate of confirmation. I concur however in the reversal of the judgment on account of the admission of improper evidence.