HENRY W. WILLIAMS, Respondent, *v.* CHARLES J. CARPENTER, Appellant.

*Confirmation—Mistake.*—Williams v. Carpenter, 28 Mo. 438, P. 1, affirmed. *Quære*—Can a confirmation certificate issued to a person erroneously named by mistake be reformed ?

*Appeal from St. Louis Land Court.*

The plaintiff sued in ejectment to recover possession of a tract of one by forty arpens, alleging in his petition that it was the same tract which was proved before Recorder Hunt in the name of *Louis* Lacroix, meaning *Joseph* Lacroix. The plaintiff claimed title under Joseph Lacroix, and the defendant under *a Louis* Lacroix.

At the trial the plaintiff gave in evidence the confirmation to Louis Lacroix, in the usual tabular form, dated March 3, 1825, granted under the act of Congress of 26th May, 1824, on proof of inhabitation and cultivation in conformity with the provisions of the act of 13th June, 1812.

Plaintiff also gave in evidence a certificate of confirmation, No. 145, issued by the Recorder of Land Titles in the name of Louis Lacroix, and also several deeds and also oral proof tending to show title in him to the *locus in quo* derived from Joseph Lacroix.

Plaintiff then called Agustus H. Evans. In answer to a question by plaintiff, which was objected to by defendant as incompetent, this witness stated " that he was present at the office of the Recorder of Land Titles in 1825 or 1826, and found Lacroix and Baribeau there; whether they had just made proof of their claims, or were about to prove them, witness could not say, but from what took place witness' attention was called to the proving up of a claim to a lot on Grand Prairie; witness could not recollect who was the witness for Joseph Lacroix to prove up his lot in the Grand Prairie, but was under the impression that Baribeau did."

Defendant duly objected to this testimony as incompetent, and excepted to the decision of the court in admitting it.

In answer to another question of the same import (also objected to), this witness said, "I am under the impresssion that Baribeau proved it up for him (Joseph Lacroix); I think Lacroix was witness for Baribeau, and that Baribeau was witness for Lacroix ; witness did not know what Lacroix it was, or whether he heard the proofs given, or heard it read from the record."

This evidence was duly objected to as incompetent and exception taken to its admission.

Plaintiff called several witnesses who had lived a great number of years in St. Louis, and among other matters they severally testified in substance that they knew Joseph Lacroix, but had never known Louis Lacroix, nor ever heard of him. The testimony of each of these witnesses the defendant objected to as incompetent, but the court admitted it and defendant duly excepted.

The defendant gave in evidence several deeds and also gave oral testimony tending to show the legal title in him to the *locus in quo* derived from Louis Lacroix.

Defendant also gave evidence tending to prove that Louis Lacroix was an inhabitant of St. Louis in Spanish times, and that he cultivated and claimed a lot in the Grand Prairie common field of St. Louis, at the place where the land in controversy is situated.

The court, at the instance of the plaintiff, gave the following instructions to the jury :

1. If the jury find from the evidence that Joseph Lacroix was the person who appeared before Hunt, the recorder, in 1825, and caused the proofs to be made in regard to the cultivation of the common field in the Grand Prairie of St. Louis, bounded north by Pierre Baribeau and south by Paul Le Grandeur, alias Guitard, and that the recorder did give to Joseph Lacroix the certificate of confirmation, but by a mere mistake wrote the name *Louis* insisted of Joseph, then Joseph Lacroix or his representatives are entitled to the bene-

fit of the certificate of confirmation read in evidence in this cause.

2. If the jury find from the evidence that Joseph Lacroix was the person who appeared before the recorder in 1825, as stated in the instruction No. 1 for plaintiff, and that he was the person to whom said certificate of confirmation was actually issued, then the plaintiff is entitled to recover, if he has shown a derivative title to the premises in question under Joseph Lacroix's legal representatives.

3. And if the jury find for the plaintiff, they will assess as damages the rents and profits of the twelve arpens of land sued for on the east end of said one by forty arpens, from the 2d day of December, 1856, to this date; and the jury will also assess the value of the monthly rents and profits of said land.

Defendant duly excepted to the giving of these instructions.

The plaintiff also asked the following instructions, which the court refused to give:

1. The act of Congress of the 3d of June, 1812, confirmed to the inhabitants of the village of St. Louis the rights, titles and claims of said inhabitants to their common field lots, which said lots had been inhabited, cultivated or possessed prior to the 20th day of December, A. D. 1803. It was therefore necessary that the person claiming a common field lot by virtue of this act should have been an inhabitant of St. Louis cultivating or possessing said lot prior to the 20th of December, 1803, and at the date of the passage of the act continuing to claim said lot by himself or his legal representatives. And the act of Congress of the 26th May, 1824, required the said inhabitants whose claims had thus been confirmed by said act of June 13, 1812, to appear before the Recorder of Land Titles and prove before said recorder the fact of such inhabitation, cultivation, or possession, and the boundaries and extent of their claim; and the said proof, when thus made, must have been made by a

claimant, or his legal representatives, whose claim was confirmed by said act of Congress of June 13, 1812.

2. By the act of Congress of May 26, 1824, it was made the duty of the Recorder of Land Titles to issue to the persons making the proof of cultivation or possession before him a certificate of confirmation; and if the jury find that Joseph Lacroix was the person who made the proof before the recorder, it was the duty of said recorder to issue the certificate of confirmation to the claimant of the lot who made the proof; and in the absence of all evidence in regard to that subject, the presumption is that the said recorder issued said certificate to the claimant who made the proof before him.

The defendant asked and the court gave the following instructions:

1. The confirmation certificate No. 145, issued by the Recorder of Land Titles, read to the jury by the plaintiff, is *prima facie* evidence that the land therein described was confirmed by the United States to *Louis Lacroix* or his legal representatives; and if the land sued for in this action is a part of the land described in said certificate of confirmation, then the plaintiff cannot recover, and the jury should find for the defendant, unless they find that the said recorder did in point of fact issue said certificate to Joseph Lacroix, but by mistake inserted the name of Louis instead of Joseph.

2. If the confirmation certificate read in evidence was granted in the name of Louis Lacroix, it was not necessary to its validity that he should have been personally present before the Recorder of Land Titles at the time said certificate was granted, nor was it necessary that said Louis should have been present at the time proof of inhabitation or cultivation was made in his behalf before the recorder.

3. Unless the deeds read in evidence under which the plaintiff claimed title were made by the heirs or legal representatives of Joseph Lacroix, the plaintiff cannot recover, and in no event can he recover more of the premises in ques-

tion than he has shown deeds for from the heirs or legal representatives of said Lacroix.

The defendant also asked the following instructions, which were refused :

1. The confirmation certificate No. 145, issued by the Recorder of Land Titles, read to the jury by the plaintiff, is *prima facie* evidence that the land therein described was confirmed by the United States to Louis Lacroix or his legal representatives ; and if the land sued for in this action is a part of the land described in said certificate of confirmation, then the plaintiff cannot recover, and the jury should find for the defendant.

2. The certificate of confirmation No. 145, read in evidence, is *prima facie* evidence that the same was intended by the Recorder of Land Titles for the person therein named as the confirmee and the burden in this case of proving to the contrary rests upon the plaintiff.

3. The plaintiff having given in evidence the confirmation certificate No. 145 in the name of Louis Lacroix, he (the plaintiff) cannot in this action invalidate this certificate, or show that the Recorder of Land Titles, when he made the said certificate, intended to make the same for and in the name of Joseph Lacroix.

4. Although the jury may believe from the evidence that the confirmation certificate No. 145, to Louis Lacroix, was made or granted by mistake on the part of the Recorder of Land Titles, yet said certificate, if genuine, is sufficient in law to transfer to said Louis Lacroix the land therein described, if the jury find from the evidence that there was a person by that name: and if the jury find that there was no person by the name of Louis Lacroix, then said certificate is wholly inoperative and void, and the title to the land therein described remains in the United States, and in such case the plaintiff cannot recover.

5. In making proof of inhabitation or cultivation before the Recorder of Land Titles, it was not necessary for the

claimant himself to be present; he might act by agent or attorney; and although the jury should believe from the evidence that Joseph Lacroix was the person who actually attended to the business of making the necessary proof in regard to the tract in question before Recorder Hunt, this fact alone does not tend to show that he was the person to whom the confirmation was intended to be made.

6. There is no evidence in this case that Joseph Lacroix inhabited, cultivated or possessed the premises in question prior to December 20, 1803.

7. If the jury find from the evidence that Joseph Lacroix and Louis Lacroix were different men; that said Joseph was the claimant before the Recorder of Land Titles of the land described in the certificate of confirmation read in evidence, and caused the proof to be made touching said claim before said recorder; and if the jury also believe from the evidence that said recorder granted said certificate to said Louis Lacroix by mistake, nevertheless said certificate is valid and operative in law in favor of Louis Lacroix, the confirmee therein named.

8. If the jury find from the evidence that Louis Lacroix did inhabit, cultivate or possess the common field lot of one by forty arpens in the St. Louis Grand Prairie common fields, described in plaintiff's petition, prior to the 20th December, 1803, and that the land in question is a part of the same common field lot, then they should find for the defendant.

9. The claim of the plaintiff to the possession of the premises in question is not supported by the confirmation certificate No. 145, issued by the United States Recorder of Land Titles in the name of Louis Lacroix, nor by the tabular list of confirmation of the same in the name of Louis Lacroix, which were given in evidence.

10. The court instructs the jury that upon all the evidence in this case the plaintiff is not entitled to recover against the defendant.

*J. M. Krum* and *C. C. McClure*, for appellant.

The confirmation certificate No. 145, issued to Louis La-croix by the U. S. Recorder of Land Titles for the land in question, which was used in evidence, is evidence of as high a character as a patent would be, that the title to the land in question had passed from the United States to said Louis Lacroix. (Gurno v. Janis, 6 Mo. 330; Maclot v. Dubreuil, 9 Mo. 453; 28 Mo. 153, 460–1; Saunderson v. Jackson, 2 B. & P. 238; Dillon v. Harris, 4 Bligh, n. s., 343; Short-rede v. Chick, 1 A. & E. 57; Phillipp's Ev., n. 753.)

The legal title in Louis Lacroix, as appears of record by said proof and confirmation certificate, cannot be impeached collaterally. This being an action of ejectment for posses-sion, the court below erred in admitting the plaintiff to intro-duce parol evidence proposing to show that the recorder had made a mistake in granting the confirmation to Louis La-croix, and that Joseph was the man entitled to it. Parol evidence is not admissible to contradict, add to, or in any manner vary, the terms of said confirmation. (Ashley and Rector v. Bird, 1 Mo. 640; Lane v. Price, 5 Mo. 101; Si-mond's Adm'r, &c., v. Beauchamp, 1 Mo. 570; Barton v. Wilkinson, 1 Mo. 53; Hartt v. Rector and Dobbins, 13 Mo. 498; Murry v. Loften et al., 15 Mo. 621; Jones v. Jeffries, 17 Mo. 577; Woodward and Thornton v. M'Gaugh and Brown, 8 Mo. 161; Davis v. Davis, 8 Mo. 56; Querry v. White, 1 Bibb, 271; Patton v. Robinson, 1 Bibb, 285; Jackson, ex d. Smith, v. Marsh, 6 Cow. 281; Jackson, ex d. Van Beuren, v. Hoffman, 9 Cow. 271; 1 Phillipp's Ev., 2d ed., 537–40, 547–8; 2 id., Cowen & Hill's Notes on, 2d ed., 1422, 1428–9, and cases there cited, and pp. 1466–71; Sugden on Vendors, 7th Am. from 11th Lond. ed., 153–6, 163–4; Story on Cont., 2d ed., 669; Milling v. Craukfield, 1 McCord, 262; Swart et al. v. Service, 21 Wend. 36; Parteriche v. Paulet, 2 Atkins, 383; Land v. Land, 1 N. H. 39; Staunton v. Commonwealth, 2 Dana, 387; Conner v. Chase, 15 Vt. 764; Hunt v. Hunt, 3

Bro. C. C. 311; Strode v. Russell, 2 Vern. 624; Baylis v. Att'y Gen., 2 Atk. 239; Custtedon v. Turner, 3 Atk. 257; Champion v. White, 5 Cow. 509; Morris v. Edwards, 1 Ham. 184; Betts v. Damumbrune, Cooke, 39; Bowzer v. Martin, 6 Rand. 525; Marshall v. Dean, 4 J. J. Marsh, 583; Snyder v. Snyder, 6 Binn, 483; Gatewood v. Burrus, 3 Call, 167; Dunlap v. Munroe, 7 Cranch, 242; Cowen v. Harrod, Litt. Sel. Cas. 4; Britton v. Lawrence, 1 Chip. 103; Wood v. Mansell, 3 Blackf. 125; Woodyard v. Threlkeld, 1 A. K. Marsh, 10; Rogers v. Moore, 2 Root, 159; Claremont v. Carlton, 2 N. H. 369; Linscott v. Fernald, 5 Greenl. 496; McCall v. Larimer, 4 Watts, 351; Burns v. Lyons, 4 Watts, 363; Locke v. Whiting, 10 Pick. 270; Chappel v. Avery, 6 Conn. 31; Ross v. Reed, 1 Wheat. 482; Jackson v. Hart, 12 John. 77.)

*Whittelsey*, for respondent.

In the first place, the plaintiff does not say that the certificate of Hunt was *issued*—or *delivered*, to use a plainer term—to *Louis* Lacroix by mistake, or through error, for Joseph Lacroix; on the contrary, he expressly asserts—1. That *Joseph* Lacroix was an inhabitant of the village of St. Louis prior to 1803. (See sec. 1 act of June 13, 1812.) 2. That he was the cultivator and possessor of the land sued for. 3. That *Joseph* Lacroix, and he only, presented the claim to Recorder Hunt, and made the proper proofs. 4. That the certificate *was issued* to Joseph Lacroix—was delivered to him (*Joseph*), and not to Louis, nor to any one for *Louis*. (A deed takes effect by delivery.) 5. That at the date of the proof no such person as *Louis* Lacroix was in existence; while the claim and the evidence in its support show that the claimant—*no matter* what his name—was a living, breathing being, alive at that date, March 3, 1825. 6. That the only *Louis* Lacroix ever known never was an inhabitant of St. Louis, but of St. Charles, and that he died long prior to 1812. (See testimony of Reynal, Mad. Ortes, Colastique, Lefevre, et als.) 7. That the mistake is simply

in the *misnomer* of *Louis* for JOSEPH, and in nothing else; and that all else is correct.

The position taken by defendant's counsel is, that, in an action to recover possession of the land, the plaintiff can show himself to be the confirmee only by showing that *he bears* the SAME *name, in full,* with the person named in the certificate; that the *only possible* evidence of identity is NAME—Louis; that no description will answer.

We now proceed to show that the name is merely descriptive of person—*prima facie* evidence of *identity,* not conclusive, subject to be supplied or varied by other legal evidence, *at law* as well as in equity.

We premise this logical proposition: that, in speaking of persons, we designate particular individuals having, first, the qualities common to all men; secondly, the qualities which separate the individual from his fellows; and that we use the *name* simply as a term of designation.

I. *Prima facie* the name identifies the person; (2 Phil. Ev., Cow. & H. Notes, 508, ed. 1859;) but it may be very insufficient evidence, and require further proof. (2 Phil. Ev. 509.)

So in the case of Jackson ex d. v. King, 5 Cow. 237, citing the cases in 10 J. R., 12 J. R., &c., it was held *prima facie* evidence that the ancestor of the lessors bore the same name with the person named in the grant, and that it was for the opposite party to rebut this presumption of identity.

The law generally upon this character of evidence, and as to the admissibility of extrinsic evidence to identify persons or things, will be found in 2 Phil. Ev., C. & H. n., ch. 8, § 2, p. 717, ed. 1859, and cases there cited; Beaumont v. Fell, 2 P. Wms. 141; Amb. 174; Miller v. Travers, 8 Bing. 244; Blundell v. Gladstone, 11 Sim. 467. As to identity of persons, see n. 510 of 2 Phil. Ev., C. & H. n., p. 718 & 723, ed. 1859. "A deed to A. B. & Son"—A. B. having several sons, but being in partnership with one of them by the firm name, identifies the person. (Hoffmann v. Porter, 2 Brock, 159; Barkley v. Barkley, 1 McCord, 273.) So when there are

two persons of the same name as that in the deed, the circumstances may show whether of the twain was meant (Coit v. Starkweather, 8 Conn. 289); so what was said and done indicating for whose benefit a grant was intended, was admissible to designate which one of two persons having the same name was meant. (Stockton v. Williams, 1 Doug., Mich., 546.)

The cases above cited are cases showing some ambiguity, when the facts, as they were, are applied to the language of the instrument to assist in its construction, or to explain what was meant; as which of two persons bearing the same name was intended, or where the terms of description are not all applicable to the same person. (2 Phil. Ev., C. & H. n., 750, ed. 1859.) So of two George Gords. (Doe ex d. Gord v. Needs, 2 Mee. & W. 129; Jones v. Newman, 1 Black. 60; 2 Phil. Ev. 769, n. 519.) *Caroline Thomas* was permitted to show that she was the person *designated* by the words *Cornelia Thompson*. (Thomas v. Stevens, 4 J. C. R. 607; Conolly v. Pardon, 1 Paige, 291.) In the case cited, the word "*brother*" was considered as a descriptive word controlling names. (Smith v. Smith, 4 Paige Ch. R. 271; Verner v. Henry, 3 Watts, 385.) Most of this class of cases depend upon the rule that a false description shall not avoid the grant—*falsa demonstratio non nocet*. See cases cited in 2 Phil. Ev. 871.

Most of the cases cited in the books have arisen upon the construction of wills, some having been decided at equity and some at law. Doe ex d. Chevalier v. Huthwaite, 3 Barn. & Ald. 632, was a case at law in ejectment.

II. We now assert that at law a party may show by extrinsic evidence that there is an ambiguity in the descriptive words of a grant or deed, and explain it by parol testimony; that a name is a description merely, and that if the name does not agree with the remaining words or forms of description that it may be rejected, on the principle of *falsa demonstratio non nocet*.

5—VOL. XXXV.

See. 2 Phil. Ev., C. & H. Notes, 771, ed. 1859, n. 519, and the comment on the case of Jackson ex d. Dickson v. Stanley, in ejectment. In that case, by rejecting the word "*David*" as descriptive, and seeing to what class of persons the grants were made, to wit, to a soldier who had served in one of two named regiments, &c., the person would have been properly described, rejecting the christian name, as in the case at bar. The case of Jackson ex d. v. Lawton, 10 J. R. 23, was a suit between parties claiming under *conflicting* patents to the same land, and not between two persons claiming under the same patent or instrument, and, of course, the elder patent was the best title, and so in Maguire v. Tyler and Broderick v. Bagnall.

Jackson ex d. v. Stanley, 10 J. R. 134, was an ejectment at law, and the parties both claimed under a patent to *David* Hungerford, the plaintiff alleging that "*David*" was a misnomer, and that the person to whom the grant was made was named Daniel, and they entered into an inquiry as to the circumstances of the description, to show the *misnomer*. The defendants claimed under a person bearing the name of David Hungerford. This case and that at bar are parallel. Evidence was admitted to show that David H. could not have been the party to whom the patent was issued.

In Jackson ex d. Shultze v. Goes, 13 J. R. 518, it was held, that it was competent for a defendant in ejectment to prove that a *person claiming* as patentee although of the *same name*, was not the patentee intended by the grant; that is, that something more was necessary than mere identity of name. See Spencer's opinion, giving the reason of the rule, affirming Jackson v. Stanley, 10 J. R. 133 ; and is again followed by the case of Jackson ex d. v. Boneham, 15 J. R. 226, patent to Moses Minnor, being shown to describe Moses Minor.

All these cases are cited and approved in Jackson ex d. v. King, 5 Cowen, 237, which reviews this matter of the name as a descriptive term. Again, in Jackson ex d. v. Cady, 9 Cowen, 140, the cases are again reviewed at length, and the doctrine of Jackson v. Stanley affirmed. The case of Jack-

son v. Hart, 12 J. R. 77, does not conflict with Jackson v. Stanley, 10 J. R. or if so it is overruled in Jackson v. Goes, 13 J. R. 518, and 9 Cowen, 140. In Scanlan v. Wright, 13 Pick. 523, a devise to E. A. S. was proven to mean E. A. C., the devisee having married.

So in Conkey v. Kingman, 24 Pick. 115, it was held, that the description by the name of Susan, in a record, would not affect it, although her name was Sarah, if there were no mistake as to the identity of the person.

In Parvel v. Biddle, 2 Dal. R. 70, a legacy to Samuel P. was proven to be intended for William P., although there were persons of both names. This was in a suit at law.

In Sterlie v. Reid, a judgment had been obtained against a person by the name of Joseph Reid. In a suit upon the record, it was permitted the plaintiff to aver and prove that the defendant, whose name was James, was the same person sued in the previous suit. So that a "*misnomer*" did not affect the record.

In Toole v. Peterson, 9 Ired. 180, "*Whatson*" was proven to mean Watson in a deed.

With regard to this matter of "*misnomer*," in 15 Vin. Ab. Tit. Misnomer B, 2, it is stated, that in fines and feoffments a change into another name does not avoid it. Now why? Because the description can be supplied by the attending circumstances, &c., as to what man, no matter his name, the livery of seisin was made, or who appeared actually in court.

In 5 Bac. Ab. Misnomer D, it is said a mistake of the christian name is fatal in deeds and judicial proceedings.

I have shown that it does not avoid fines nor judicial proceedings ; and I have not been able to find a single case where it is held that a mistake of the name, or misnomer, avoids a grant, unless it be where the explanation of the mistake makes the deed void for *uncertainty* of description.

Coke says, a grant may be good, though the grantee's name of baptism be mistaken; as a grant to Robert, Earl of Pembroke, when his name was Henry ; or to George, Bishop of Norwich, when his name is John; because there can be but

one of that name or dignity; that is, the description is certain by the title without the christian name, and the description being sufficiently certain, the grant is not void for uncertainty of description. It is sometimes said that the rule is different in cases of wills and deeds. That is not practically the case, as far as actual decisions go; although courts always try to support a will, and have sometimes gone farther than principle warrants. The true principle to be derived from all the cases is this: from the terms of description, can it be determined who was the person? if so, the grant or the will is good; if not, it is void for uncertainty of description. In construing the instrument, all surroundings and calls must be looked at and examined, if necessary : the name being the first, then titles, relationships, family, *gens*, residence, actions, &c.; as Earl Pembroke, son of John, nephew, issue, of London, Reverend, soldier, captain, &c., &c.

It is said by the counsel for defence, that the only method of showing the error, is upon a bill to correct the misnomer of the grant. This might be true if the description were so vague that the application of it to the proper person could not be shown, or if the *wrong person* had fraudulently procured the certificate ; neither of which propositions are true.

In the case of Doe ex d. Meadows v. Roe, Geo. Dec. p. 80, will be found a full discussion of the law upon this point, of permitting extrinsic evidence first to raise a latent ambiguity, and then to explain it. This was an action of ejectment. The plaintiff, whose lessor was Edward S. Meadows, sued upon a grant from the State of Georgia to James Meadows, orp an, of Harrols district, Upson county. The plaintiff proved that there was no person in the county of the name of James to whom the description would apply; that the plaintiff was an orphan residing in the county ; that his father's name had been James, and showed that he was the person intended. The court, upon a full examination of the authorities, decided that the evidence was admissible, and gave judgment for the plaintiff.

*B. A. Hill*, for respondent.

I. The title to the field lot in controversy passed *proprio vigore* by the act of the 13th of June, 1812, to some private individual who inhabited St. Louis before the 20th December, 1803, and who cultivated and possessed the lot prior to that date. No names of any of the confirmees are given in the act, but the confirmations were made *en masse* to all the persons who answered to the descriptions given in the act. The lots were granted and the individuals were to be ascertained by proof in a court of justice. (Act of 13th of June, 1812; Guitard v. Stoddard, 16 How.; Glasgow v. Taylor, and School Commissioners v. Hortez, 26 Howard, 1 Black.)

II. The title passed *eo instanti* to the person entitled to the lot, who must answer the following descriptions: 1. An inhabitant of the village of St. Louis; 2. A cultivator of a field lot in the Grand Prairie before the 20th December, 1803; 3. The field lots of that prairie must have belonged to the village of St. Louis in Spanish times; 4. The person confirmed must have been a claimant by title or by cultivation before 1803, while inhabiting the village.

III. Although the title had vested in Joseph Lacroix in 1812, Congress passed an act 26th May, 1824, to enable the Recorder of Land Titles to *perpetuate the evidence* as against the United States of the fact of cultivation and boundaries, by certificate to be issued on proof thereof as *prima facie* evidence. This act made it the duty of the owners or claimants (§ 1) " *to designate their said lots by proving* before the recorder * * * the fact of such *inhabitation, cultivation*, or possession, and the *boundaries and extent* of each claim, so as to enable the Surveyor General to distinguish the *private* from the *vacant* lots." * * * * (§ 3.) That the recorder shall issue a certificate of confirmation for each claim confirmed, * * * * and shall receive one dollar for *each lot* proved up," &c.

Under this act Joseph Lacroix and Pierre Baribeau went before the Recorder of Land Titles, and on the 3d of March,

1825, they proved up their cultivation of the two field lots adjoining each other in the *Grand Prairie* common fields of St. Louis; and the evidence shows that Joseph Lacroix, like many, if not all, of the old French settlers, had a nickname; he was called Lacroix Bissonette, the lime burner. He and Baribeau were friends; they lived in the same house for some time together; and A. H. Evans saw the two old Frenchmen prove up their claims, and knows that Joseph Lacroix was the person who appeared and made proof before the recorder in 1825.

The defendant claimed under Louis Lacroix, whose name by mistake was entered in the certificate of confirmation instead of Joseph Lacroix, dit Lacroix Bisbonette, the lime burner.

The proof is conclusive that Louis Lacroix died before 1815; that he lived in St. Charles when not absent on voyages; that he was the brother of St. Paul Lacroix, and died before St. Paul. St. Paul Lacroix was buried in St. Charles in 1815.

The only question in this case is whether it was competent for the plaintiff to introduce evidence before the jury to show that Joseph Lacroix was the person intended by the name Louis Lacroix, and that Joseph Lacroix made the proof and procured the confirmation certificate of 1825. If the proof was competent, then the question whether Joseph Lacroix was the person intended is a question of fact for a jury, and has been found by the jury for the plaintiff.

There were the representatives of two persons who appeared claiming title to this field lot: the plaintiff, representing Joseph Lacroix; and the defendant, representing Louis Lacroix.

The *person* confirmed by the act of 1812, and making proof by the act of 1824, must have the following descriptions beside the name: 1. An inhabitant of St. Louis before 1803; 2. A cultivator of a field lot in the *Grand Prairie* before 1803; 3. A claimant of the lot at the time he was an inhabitant of the village; 4. A claimant living in 1825, and appearing before the Recorder of Land Titles and making proof of his

cultivation in Spanish times.  *Joseph* Lacroix answers all these descriptions, and there is no other person who can or does answer them but *Joseph Lacroix*.

By the code of 1849, under which this suit was brought, the distinction between law and equity was abolished.  A bill in equity, to ascertain who was the party intended to be confirmed by the certificate, would present the same question, and none other, that has been tried in this case upon a direct issue put to the jury under proper instructions.  The record in this case shows that the direct issue has been tried, and the jury has found that Joseph Lacroix was the person intended and proved to have been confirmed by the certificate issued to Louis Lacroix; and the evidence preserved in the record shows that all the parties in interest claiming title under Joseph or Louis Lacroix were before the court, and the effect of the judgment is precisely the same as if a bill in equity had been filed in the first instance.

Plaintiff says the description of Lacroix is false in the christian name, and that *the other* particulars of description given in the acts of Congress granting the land to the inhabitant, cultivator and possessor, prevents the false description from injuring the title of Joseph Lacroix to the lot confirmed to him, and described in the certificate as the lot of Louis Lacroix.  The authorities are full that "*falsa demonstratio non nocet*" in such cases.

In Conolly v. Pardon, 1 Paige Ch. R. 291, the testator bequeathed certain moneys to his brother *Cormac Conolly* and his two sisters.  By a codicil he bequeathed to his nephew *Cormac Conolly*, son of his brother *Cormac Conolly*, five hundred dollars for his ecclesiastical education : this sum to be taken from what he had bequeathed to his brother Cormac and the sisters.  The testator had no brother named Cormac, but a nephew of that name, son of his brother James, the complainant, and the nephew at date of will and codicil was pursuing his classical studies in Ireland with a view to an ecclesiastical calling.  He was the only nephew of that name, and complainant was the only brother that survived the tes-

tator, unless another brother named Henry were still living. The chancellor held that James was the brother intended and decreed accordingly; he said "the reference to this devise in the codicil, and the description of his nephew as the son of his brother Cormac, show conclusively that complainant James was the legatee intended by the name of Cormac Conolly." (Cow. & Hill's Notes to Phil. Ev., note 940 to p. 533, 3d vol. 1369.) So also it was held in Smith v. Smith, 1 ed. Ch. R. 189, and 4 id. 271; also Tudor v. Terrell, 2 Dana, 47, 50–1; Wigram on Extr. Ev. 81, 122. So also in Vernor v. Henry, 3 Watts, 385. So also in Jackson ex d. Miner v. ham, 15 John. 226.

So in Dowset v. Sweet, Ambl. 175, a legacy was left to *John and Benedict*, sons of *John Sweet*. John Sweet had only two sons, viz., Benedict and James. Held, that James might take; for after rejecting what was false in the description, enough remained to indicate the intention of the testator and justify the application of extrinsic evidence.

So where a devise was to S. H., second son of T. H, but in fact he was the third son, evidence of collateral circumstances was allowed to ascertain whether the testator had mistaken the name or not. (Doe ex d. Chevalier v. Huthwaite, 3 B. & Ald. 632; Wigram on Extr. Ev. 81.)

So in Standen v. Standen, 2 Ves. Jr. 589, a legacy was to "Charles Miller Standen and Caroline Eliz. Standen, legitimate son and daughter of Charles Standen, now residing with a company of players"; and their claim was supported though it appeared they were *illegitimate*.

So in the case of Smith v. Coney, 6 Ves. 42, a legacy to the Reverend *Charles* Smith, of Stapleford, Tawney, was sustained as a legacy to the Reverend *Richard* Smith, he answering in other respects to the description in the will.

Cowen, in commenting upon the force and effect of the rule "*falsa demonstratio non nocet*," (note 940, p. 533, of Phil. Ev., vol. 3, p. 1372,) notices the case of Jackson *ex dem.* Dickson v. Stanley, 10 John. 137, where a patent to *David* Hungerford, a soldier, was produced, in an action of eject-

ment, by the heirs of *Daniel* Hungerford, and comments upon the effect of the rule. A critical examination of the opinion shows that the ancient opinion, that a grant is void where there is a mistake in the christian name, is repudiated. Lord Coke is cited (Co. Litt. 3, *a*) as stating the law correctly; "that if lands be given to *Robert*, Earl of Pembroke, when his name is Henry; or to *George*, Bishop of Norwich, when his name is John, the grant is still good, because there can be but one of that name and dignity." The court proceeds: "If, then, the patent in this case had designated the Hungerford intended by specifying the regiment and company to which he belonged at the time of his death, it might have been good, *as being equally susceptible of being reduced* to a certainty."

So in Jackson v. Goes, 13 John. 524, it was held unanimously, that the identity of the patentee is a matter that may be inquired into, in an action of ejectment, collaterally; that the doctrine was so settled by the case of Jackson v. Stanley, 10 John. 136; and the case of Jackson v. Hart, 12 John. 77, was not intended to overrule the case of Jackson v. Stanley.

The case of Jackson *ex dem.* Mancius v. Lawton, 10 John. 23, cited by Mr. Justice Scott in support of his opinion, that the confirmation certificate is void by reason of the latent ambiguity in the false denomination of the christian name, has no bearing upon the question at issue.

DRYDEN, Judge, delivered the opinion of the court.

When this case was here before (28 Mo. 453) this court decided—Judge Scott delivering the opinion of the court—that where a grant, though by mistake, is made to one, another cannot divest him of his title by showing that he was the person for whom the bounty was intended. If the government, on a false suggesion or by mistake, has granted a patent, it can only be avoided by *scire facias* or other suitable proceeding instituted directly for that purpose. *It can*

*not be done in a collateral action.* The circumstances of this case do not warrant the application of the principle, that by parol evidence one may show that he is the person named as grantee or patentee. The case was sent back to the Land Court, where it was again tried, but without any change in the pleadings, and the plaintiff recovered a verdict and judgment as in the first instance.

This judgment and the former decision cannot stand together. The plaintiff's theory is that Joseph Lacroix, under whom he claims title, was the person who made the proof before the recorder, and was the person who was intended to be confirmed, and that the name of Louis Lacroix instead of Joseph Lacroix was inserted in the certificate of confirmation as confirmee by the mere mistake of the recorder. The utmost that can be said for the plaintiff's title, upon his own theory, is that it is an equitable title. Such a title will not support an ejectment.

The petition being merely a petition in ejectment contains no allegations to which proof of the alleged mistake could apply, and for this reason, if no other, it was not competent for the plaintiff to show the supposed mistake. If the plaintiff can recover at all, it is because he has the right to have the certificate of confirmation reformed and the legal title vested in himself.

To accomplish this result, the petition should have such shape as would admit the requisite proof and sustain a decree reforming the instrument. The question whether the instrument is the subject of reformation has not been discussed, and we therefore give no opinion on this point; but if it is, we have no doubt this relief can be given and possession recovered under a proper frame of the pleadings in the one action.

Let the judgment be reversed and the cause remanded. The other judges concur.